STATE OF NORTH CAROLINA v. RICHARD SALEM

No. 8026SC607

(Filed 3 February 1981)

### 1. Constitutional Law § 51— delay between offense and arrest — no denial of speedy trial

In a prosecution of defendant for possession and sale of methamphetamine where defendant contended that he was denied his constitutional right to a speedy trial as a result of the 367 day delay from the time of the occurrence of the alleged drug sale until his first apprisal of the charges lodged against him arising out of that event, the trial court, in determining the nature and effect of any pre-indictment delay which occurred in this action, should have considered the interim between the date the alleged transaction occurred, 21 December 1977, and the date of defendant's arrest in May 1979 rather than the interim between the date the alleged transaction occurred and the date defendant was first indicted, since the original indictment, issued on 3 April 1978 and dismissed by judicial order on 17 August 1979, was null and void. However, although the trial court did not consider the correct time interval, such error was not prejudicial to defendant, where defendant failed to demonstrate (1) that the State intentionally delayed in accusing him in order to impair his ability to defend himself, as the State first delayed in arresting defendant for the purpose of keeping its undercover investigation a secret, the fact that the State had gone ahead and procured the original indictment against defendant on 3 April 1978, such indictment being valid from that time until the time the court dismissed it, illustrated that the State was not intentionally delaying to harass defendant, and the State was unable to locate defendant during most of the delay; and (2) that actual or substantial prejudice to defendant occurred as a result of the pre-indictment delay, as defendant did not establish that any significant evidence was lost as a result of the State's delay in accusing him of the crimes, and defendant failed to demonstrate that any evidence lost as the result of faded memories of witnesses would have been significant or helpful to his defense.

### 2. Narcotics § 4— controlled substance not introduced into evidence — sufficiency of evidence

In a prosecution of defendant for possession and sale of methamphetamine, there was no merit to defendant's contention that the trial court erred in denying his motion to dismiss made on the ground that the controlled substance was not properly introduced into evidence, where an undercover agent testified that defendant sold him a substance which defendant represented as being methamphetamine; in further testimony the agent stated that he placed the substance which he purchased from defendant in an envelope marked State's exhibit No. 1; defendant stipulated that the substance contained in the State's exhibit No. 1 was 25% methamphetamine; this exhibit was opened and passed among the jurors; and it was not necessary, in light of all the evidence before the jury, that the substance technically be introduced into evidence.

### 3. Criminal Law § 26.5; Narcotics § 5— conviction of possession and sale of

**methamphetamine — no double jeopardy**

Possession of methamphetamine and sale of methamphetamine are two separate and distinct offenses, and defendant could be convicted of both crimes and not have his constitutional rights violated.

**4. Criminal Law § 90.2— court's refusal to declare witness hostile — no error**

The trial court did not err in refusing to declare a confidential informant a hostile witness where defendant called the witness to the stand during the *voir dire* conducted on defendant's pretrial motion to dismiss for failure to prosecute promptly; the evidence did not demonstrate that during the trial the witness's interests were opposed to those of defendant; and following the denial of his motion to have the informant declared a hostile witness, defendant did not call him as a witness so that it was impossible to know whether the informant would have in fact been a hostile witness.

**5. Criminal Law § 102.6— jury argument — no impropriety**

Statements by the district attorney during his closing argument that the jury should consider "who has reason to tell a lie about it and who has the reason to tell the truth," and that the jury had a responsibility like that of law enforcement officials to "clean up crime in this country" were within permissible bounds, and the trial judge did not abuse his discretion in allowing the district attorney to make these remarks.

APPEAL by defendant from *Rousseau, Judge.* Judgment entered 22 January 1980 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 5 November 1980.

On 27 August 1979 defendant was indicted on charges of felonious sale of a controlled substance, methamphetamine, and felonious possession with the intent to sell the same. On 21 January 1980 defendant made a pretrial motion asking the court to dismiss the case on the ground that there was prejudicial delay in apprising defendant of the charges lodged against him. Defendant argued that the delay worked a denial of his constitutional right to a speedy prosecution. The court conducted a *voir dire* and heard evidence presented by both the State and defendant.

In summary, the evidence produced on *voir dire* tended to show that an original bill of indictment charging defendant with the crimes arising from the 21 December 1977 incident was returned on 3 April 1978. During this interim between the date of the alleged transaction and the date of the original indictment, and on into November of 1978, an undercover drug operation concerning this defendant was being continuously implemented by the S.B.I. and Mecklenburg County officials. The authorities were making an effort to identify the source of defendant's alleged drug supply.

Following the conclusion of this investigation the authorities made a futile attempt to locate defendant. On 23 December 1978, an S.B.I. agent went to defendant's legal address, 112 Chapman Street, Charlotte. There he talked with defendant's mother and stepfather. They informed the agent that defendant had been using their address strictly as his legal and mailing address. Defendant had actually been living in different apartments in the Charlotte area. Throughout this period of time defendant had been employed in the operation of a beauty salon owned by his mother. Officers went to the beauty salon on 23 December 1978 endeavoring to locate defendant. There they were advised that defendant had not been at the business in several weeks. The authorities were unable to discover the whereabouts of defendant after the conclusion of their investigation.

On 8 February 1979 the original indictment of 3 April 1978 was dismissed with leave to reinstitute it later. The indictment was dismissed at this time because defendant had failed to appear and could not be readily found. Subsequently, defendant was located, and he was arrested on 9 May 1979. On 14 June 1979, the State purportedly gave notice of the reinstitution of the proceedings which previously had been dismissed for nonappearance. However, the written notice of the reinstitution of the proceedings was never properly filed. Pursuant to a motion by defendant, the court issued an order on 17 August 1979 dismissing the case, because no written notice of reinstitution of the action was on file. This dismissal declared the original bill of indictment null and void. A new bill of indictment charging defendant with these crimes was returned on 27 August 1979. This action was prosecuted on the basis of this later indictment.

At the conclusion of the *voir dire* the court denied defendant's pretrial motion to dismiss for the lack of a speedy prosecution. As basis for its denial of defendant's motion the court concluded that the delay occurring from the date of the incident in December 1977 until the date of the first indictment in April of 1978 was not an unusually long interim in light of the continuing S.B.I. undercover operation. The State's delay in procuring the indictment was primarily for the purpose of obtaining additional information necessary to identify the source of defendant's alleged drug supply. Additionally, the court concluded that the delay did not create a reasonable possibility of prejudice to defendant.

Following its decision on defendant's motion the court heard evidence in the cause. The evidence presented by the State tended to show the following: Defendant and one Ron Williams had been friends for some time prior to these occurrences. Defendant did not know that Williams had previously been caught selling drugs to the authorities and was cooperating with them as an informant. At approximately 9:55 p.m. on 21 December 1977 defendant met with informant Williams and two S.B.I. undercover agents at the Pressgate, a Charlotte nightclub. Williams had arranged a drug sale between defendant and an S.B.I. agent. After a brief period of conversation inside the nightclub, defendant went outside, where his car was parked, accompanied by Williams and Agent W. M. Riggsbee. Defendant obtained a package, which was later found to contain eight ounces of the drug, methamphetmine, from his car. He gave this package to Agent Riggsbee in exchange for $4800.

Defendant testified in his own behalf. His testimony tended to show that on 21 December 1977 Williams invited defendant to the Pressgate for a drink. At approximately 9:15 p.m. defendant arrived at the bar, and joined Williams who was seated at a table in the company of several men, all of whom were strangers to defendant. Williams introduced the strangers as business associates from out of town. After a short interval, Williams excused himself from the table and left the bar with one of the strangers whom defendant identified in court as Agent Riggsbee. Williams and Agent Riggsbee were gone from the bar for approximately ten minutes after which they returned to the table. Defendant testified that at this point one of the men seated at the table made some comments with reference to defendant's supplying more drugs which defendant did not understand. Thereafter, defendant and Williams left the Pressgate to go elsewhere for a drink. They did not return to the Pressgate that evening. Defendant denied having made any exchange of drugs, or having received any money.

Upon a plea of not guilty to these charges, defendant was convicted of the felonious sale of a controlled substance for which he received a sentence of not less than eight, nor more than ten years of imprisonment. He was also found guilty of the lesser included offense of misdemeanor possession of methamphetamine for which he was sentenced to a two-year term of imprisonment. Defendant appealed from the judgments entered.

*Attorney General Edmisten, by Assistant Attorney General*

*Roy A. Giles, Jr., for the State.*

*Assistant Public Defender Lyle J. Yurko for defendant appellant.*

MORRIS, Chief Judge.

**[1]** Defendant assigns error to the court's denial of his motion to dismiss for failure to prosecute expeditiously. He contends that he was denied his right to due process under the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States as a result of the 367-day delay from the time of the occurrence of the alleged drug sale until his first apprisal of the charges lodged against him arising out of that event. He maintains that the State's delay was intentional and resulted in prejudice to his defense.

Defendant alleges that the prejudice to his case resulting from the delay occurred for two reasons. First, his memory and the memory of other possible witnesses to the events surrounding the crimes had faded due to the length of the time involved; and, second, the delay had resulted in lost opportunities to procure witnesses.

In *United States v. Marion*, 404 U.S. 307, 30 L.Ed. 2d 468, 92 S.Ct. 455 (1971), the Supreme Court held that the Sixth Amendment speedy trial provision had no application until a putative defendant in some way became an "accused." *In Marion* the defendant was "accused" when he was indicted. More important to the purpose of this appeal was the Court's holding in *Marion* that the Fifth Amendment requires dismissal of an indictment if it is shown at trial that the pre-indictment delay caused substantial prejudice to a defendant's rights to a fair trial, and that the delay was an intentional device to gain tactical advantage over an accused. *United States v. Marion, supra*, 404 U.S. at 324, 30 L.Ed. 2d at 481, 92 S.Ct. at 465, and cases cited therein.

Justice Moore further elaborated on the proper test to be applied in determining whether a defendant's Fifth Amendment rights were violated by a pre-indictment delay in *State v. Dietz*, 289 N.C. 488, 223 S.E. 2d 357 (1976).

> This Court also considered pre-indictment delay in *State v. Johnson*, 275 N.C. 264, 167 S.E. 2d 274 (1969). There, we held the prosecution must be dismissed due to an intentional four-year delay by the State in securing an

indictment against defendant. Justice Sharp (now Chief Justice), speaking for the Court, said:

> "We here hold that when there has been an atypical delay in issuing a warrant or in securing an indictment and the defendant shows (1) that the prosecution deliberately and unnecessarily caused the delay for the convenience or supposed advantage of the State; and (2) that the length of the delay created a reasonable possibility of prejudice, defendant has been denied his right to a speedy trial and the prosecution must be dismissed."

Numerous federal decisions have expanded on the Fifth Amendment standards applicable to the pre-indictment situation. These decisions have recognized the uncertainty after *Marion* of whether a successful claim under the Fifth Amendment must establish both actual prejudice to the defendant *and* intentional delay on the part of the government. Most are in accord, however, that at least in the absence of intentional governmental delay for the purpose of harassing or gaining advantage over defendant, the burden is on defendant to affirmatively demonstrate actual and substantial prejudice. *United States v. Jackson*, 504 F. 2d 337 (8th Cir. 1974); *United States v. Joyce*, 499 F. 2d 9 (7th Cir. 1974), *cert. den.*, 419 U.S. 1031, 42 L.Ed. 2d 306, 95 S.Ct. 512 (1974); *United States v. Giacalone*, 477 F. 2d 1273 (6th Cir. 1973); *United States v. White*, 470 F. 2d 170 (7th Cir. 1972). Most courts appear to engage in a balancing process, such as that mandated in *Barker v. Wingo*, 407 U.S. 514, 33 L.Ed. 2d 101, 92 S.Ct. 2182 (1972), a Sixth Amendment speedy trial case, of weighing the reasonableness of the delay against the prejudice to the accused. *United States v. Jackson, supra; United States v. Norton*, 504 F. 2d 342 (8th Cir. 1974); *Robinson v. United States*, 459 F. 2d 847 (D.C. Cir. 1972).

289 N.C. at 491, 223 S.E. 2d at 359.

The right to a speedy trial derived from the Fifth Amendment pertains to the time period between the date of the occurrence of the alleged crime, and the date when a defendant is "accused" of com-

mitting that crime. An individual becomes "accused" of a crime for the purpose of calculating the length of this delay when he is either arrested or indicted. *See: United States v. Lovasco*, 431 U.S. 783, 52 L.Ed. 2d 752, 97 S.Ct. 2044, *rehearing denied*, 434 U.S. 881, 54 L.Ed. 2d 164, 98 S.Ct. 242 (1977); *United States v. Marion*, 404 U.S. 307, 30 L.Ed. 2d 468, 92 S.Ct. 455 (1971); *State v. Dietz*, 289 N.C. 488, 223 S.E. 2d 357 (1976); *State v. Johnson*, 275 N.C. 264, 167 S.E. 2d 274 (1969). Therefore, the reviewing court should examine the reasons for the delay which occurred from the time the offense took place until the time when the defendant was either arrested or indicted, depending on which occurred first.

In the case *sub judice* the superior court, when making its determination to deny defendant's motion to dismiss, considered the State's reasons for its delay from the time of the occurrence of the incident on 21 December 1977 until the date the original indictment was issued on 3 April 1978. Under the circumstances of this case that was not the proper time period to be considered. The original indictment, whose date of issuance the court used as the outer time limit of the interim period it considered, was dismissed by judicial order on 17 August 1979. Upon this dismissal the original indictment was null and void. The action was actually prosecuted on an indictment issued on 27 August 1979 charging defendant with these offenses. Therefore, for purposes of the court's inquiry into the pre-indictment delay the court should not have considered the date of the first indictment when computing the proper time interval.

In order to examine correctly the nature and effect of any pre-indictment delay which occurred in this action the court should have considered the interim between the date the alleged transaction occurred, 21 December 1977, and the date of defendant's arrest in May 1979. Defendant's arrest occurred prior to the time of the issuance of the later indictment in August 1979. This interval represents a delay of approximately 17 months between the time the offense allegedly occurred and the time defendant was formally "accused" of these crimes.

Although the court did not consider the correct time interval, we find after a review of the record that this error was not prejudicial to the defense, and was of insufficient consequence to warrant our granting defendant a new trial. After considering the facts and

reasons for the State's 17-month delay in "accusing" defendant, we do not believe that defendant has sufficiently demonstrated those things required by the test articulated in *Dietz* to show that his Fifth Amendment rights were violated. Defendant has failed to demonstrate either that the State intentionally delayed in "accusing" him in order to impair his ability to defend himself, or that actual or substantial prejudice to the defense occurred as a result of the pre-indictment delay.

Defendant has produced no evidence to show that the State's delay in placing him under arrest was done intentionally in order to damage his ability to defend himself. The testimony of the S.B.I. agents established that during the time interval between 21 December 1977 and late November 1978 the S.B.I. was continuing to conduct an undercover drug investigation of defendant. Agents were trying to locate the source of defendant's alleged drug supply. Defendant asserts that the State's delay for the purpose of keeping its undercover investigation a secret was too long when balanced against his constitutionally protected interest in being able to prepare a reasonably adequate defense.

Nevertheless, the State's legitimate need to protect the existence of an ongoing undercover operation from exposure has been frequently recognized by the courts as a reasonable justification for its delay in bringing charges. *United States v. Lovasco*, 431 U.S. 783, 52 L.Ed. 2d 752, 97 S.Ct. 2044 (1977); *State v. Dietz*, 289 N.C. 488, 223 S.E. 2d 357 (1976). At least a portion of the delay in this action was justified on that basis. Delay for investigative purposes is fundamentally unlike delay undertaken by the State to gain tactical superiority over a defendant, or to impair a defendant's ability to defend himself.

Furthermore, the fact that the State had gone ahead and procured the original indictment against defendant on 3 April 1978, such indictment being valid from that time until the time the court dismissed it, illustrates that the State was not intentionally delaying to harass defendant. Rather, the State was unable to locate defendant during most of the delay. Following the conclusion of the S.B.I. investigation of defendant in November 1978, up to the time of defendant's arrest in May of 1979, the authorities were unable to locate defendant. Agents tried to find defendant at his legal address and at the place of business he managed, but they were unsuccessful.

When reviewing these factors in combination, it appears that

the State had no intention to damage defendant's case by harassment through delay. In fact, it appears that a substantial portion of the delay was caused by defendant, himself. He was aware from the time the S.B.I. talked with his parents in November of 1978 that the authorities were looking for him in connection with these charges. Yet, his whereabouts remained unknown until his arrest in May of 1979. Defendant produced no contradictory evidence to show that the State's delay was ill-intentioned. Therefore, we must find that it was not.

Defendant maintains that he was prejudiced by the State's delay in accusation for two reasons. First, he argues that the lengthy delay resulted in his being unable to procure witnesses to testify in his behalf. The main discrepancy between the facts of the incident as shown by the State's evidence, and those as shown by defendant's evidence, was whether defendant left the bar for a few minutes with Williams and Agent Riggsbee and returned, or whether he remained at the table while Williams and Agent Riggsbee left the bar alone. Defendant argues that the testimony of possible witnesses who were in the Pressgate on the night the alleged crimes occurred might have substantiated his version of the facts, but, due to the delay in accusation, he was unable to locate these witnesses.

At some point between the date the alleged offenses occurred and the date of the trial, the Pressgate nightclub closed. Defendant was able to locate the bartender who had been on duty that night, but he was unable to locate the waitress who had waited on his table. The bartender did not recognize defendant as being a patron of the bar, which was not surprising since defendant testified he had only been to the bar on one or two occasions prior to the night in question. This implies that there was no group of people in the bar who would have noticed defendant's movements that evening, because he was not a regular customer. Defendant was unable to locate the waitress who served his table. According to his testimony his only contact with her was when he ordered a beer, so it seems unlikely that she would have been aware of his comings and goings. There were approximately fifteen other patrons in the bar while defendant was present. Defendant's testimony did not demonstrate that he was familiar with any of the other customers, nor that there was any reason why the other customers should have taken special notice of his presence. Under the circumstances it is highly speculative

whether the bartender, waitress, or customers would have been able to recall defendant's actions on that particular evening. Defendant did not establish that any significant evidence was lost as a result of the State's delay in accusing him of these crimes.

Additionally, defendant contends that he was prejudiced by the delay for the reason that after such a length of time the memories of those involved had faded to the extent that they were not capable of clearly recalling the events of the evening.

> Mere claims of "faded memory" have often been held not to constitute "actual and substantial" prejudice required by *Marion. United States v. McGough*, 510 F. 2d 598 (5th Cir. 1975); *United States v. Giacalone, supra* [477 F. 2d 1273 (6th Cir. 1973)]; *United States v. Atkins*, 487 F. 2d 257 (8th Cir. 1973). Rather, the courts hold that defendant must show that lost evidence or testimony would have been helpful to his defense, that the evidence would have been significant, and that the evidence or testimony was lost as the result of the pre-indictment delay. *United States v. Parish*, 468 F. 2d 1129 (D.C. Cir. 1972), *cert. den.*, 410 U.S. 957, 35 L.Ed. 2d 690, 93 S.Ct. 1430 (1973). Hardly a criminal case exists where the defendant could not make these general averments of impaired memory and lost witnesses. *United States v. Marion, supra.*

*State v. Dietz*, 289 N.C. at 493, 223 S.E. 2d at 360-61.

Defendant's argument on this point is hypothetical. He failed to demonstrate that any evidence lost as a result of faded memories would have been significant or helpful to his defense.

Accordingly, we find that defendant has failed to demonstrate that this pre-indictment delay was either brought about by the State intentionally to harass defendant or to handicap his defense, nor has defendant shown significant prejudice resulting from the delay. Therefore, we hold that defendant's Fifth Amendment right to due process was not violated, and the trial court was not in error in denying defendant's motion to dismiss.

[2] Defendant charges in his second assignment of error that the court erred in denying his motions to dismiss which were based upon the contention that the State had presented insufficient evidence of the crimes. Defendant contends that the State failed to

establish an essential element of both of the crimes. Specifically, he questions the denial of his motion because the controlled substance, methamphetamine, was not properly introduced into evidence.

The record shows that the drug was never actually put into evidence. However, there was other sufficient evidence to prove that this drug was traded on this occasion to justify the court's allowing the case to go to the jury. Agent Riggsbee testified that defendant sold him a substance which defendant represented as being methamphetamine. In further testimony the agent stated that he placed the substance which he purchased from defendant in the envelope marked as State's Exhibit #1. Defendant stipulted that the substance contained in State's Exhibit #1 was twenty-five percent methamphetamine. This exhibit was opened and passed among the jurors.

We think that this was sufficient evidence reasonably to satisfy the minds of the jurors that the controlled substance was exchanged by defendant in the alleged transaction. It was not necessary, in light of all the evidence before the jury, that the substance technically be introduced into evidence. Accordingly, we hold that the court's denial of defendant's motion to dismiss was not prejudicial error.

Defendant assigns error to the court's failure to require an election between the charges of felonious possession and felonious sale of the controlled substance. He maintains that his trial and conviction of both of these crimes which arose out of the same event violates the Fifth Amendment prohibition against double jeopardy.

[3]  The courts of North Carolina have repeatedly ruled that possession of a controlled substance and sale of a controlled substance are two separate and distinct offenses. A defendant may be convicted of both crimes and not have his constitutional rights violated. *State v. Thornton,* 283 N.C. 513, 196 S.E. 2d 701 (1973); *State v. Harrington,* 283 N.C. 527, 196 S.E.2d 742, *cert denied,* 414 U.S. 1011, 38 L.Ed. 2d 249, 94 S.Ct. 375 (1973); *State v. Anderson,* 27 N.C. App. 72, 217 S.E. 2d 747 (1975); *State v. Yelverton,* 18 N.C. App. 337, 196 S.E. 2d 551, *cert. denied,* 283 N.C. 670, 197 S.E. 2d 880 (1973).

[4]  This assignment of error is without merit. Defendant's fourth assignment of error questions the court's refusal to declare the informant, Ron Williams, a hostile witness. Defendant called Williams to the stand during the *voir dire* conducted on defendant's

pretrial motion to dismiss for failure to promptly prosecute. The witness testified under the direct examination of defendant, and was cross-examined by the State during the *voir dire*. Thereafter, following the State's presentation of its evidence at the trial and prior to the presentation of its own evidence, defendant moved to have Williams declared a hostile witness. This motion was denied.

We do not think that the court's determination of this motion requires us to grant a new trial. The evidence does not demonstrate that during the trial Williams's interests were opposed to those of defendant. In December of 1977, Williams sold drugs to undercover S.B.I. agents. Thereafter, he agreed to assist the S.B.I. as an informant in their investigations. Williams was not paid by the S.B.I. for his aid. He made arrangements for the agents to purchase drugs from defendant on 21 December 1977, which resulted in the charges for which defendant was tried. The undercover operations in which Williams participated were concluded in November 1978. The record contains a letter from the assistant district attorney indicating that in return for Williams's identification of his source of supply for these drugs, and in return for his truthful testimony at trial, the charges against him would be dismissed or a recommendation for his probation would be made.

At the time of the trial the undercover operations in which Williams had assisted had long since been concluded. He had already identified defendant as the source of his drug supply. Williams had done all that the State had requested of him in their agreement. Williams's promise to testify truthfully at trial would not make him a hostile witness.

Furthermore, we are unable to find that the trial court's ruling on the motion prejudiced or impeded the defense in any material way. Following the denial of his motion to have Williams declared a hostile witness, defendant did not call Williams as a witness. Therefore, it is impossible for us to know other than by speculation, whether Williams would have truly been a hostile witness. Williams's testimony during the *voir dire* indicated his willingness to cooperate with the defense. For these reasons we find that there was no prejudicial error resulting from the denial of this motion.

**[5]** During the district attorney's closing argument he made the statement to the jury that they should consider "who has reason to

State v. Salem

tell a lie about it and who has the reason to tell the truth." The court overruled defendant's objection to this statement. Defendant's final assignment of error is directed to the court's ruling.

The record does not indicate that the district attorney referred to defendant as a "liar", nor that he contended that defendant was "lying". It is not improper for the district attorney to suggest to the jury that the testimony of a defendant should be scrutinized, because a defendant has an interest in testifying falsely, if he believes the jury will give credence to the defendant's false testimony. The Supreme Court has held that it is proper for the district attorney to argue to the jury that it should carefully scrutinize the testimony of a criminal defendant, because he is interested in the outcome of his case. *State v. Thompson*, 293 N.C. 713, 239 S.E. 2d 465 (1977). The language complained of here amounts to no more than such an admonition. Therefore, we hold that the quoted portion of the State's argument was within permissible bounds.

Defendant objects to another portion of the State's argument in which the district attorney told the jury that they had a responsibility like that of law enforcement officials to, "clean up crime in this county." As a general rule the arguments of counsel must be left largely to the control and discretion of the trial judge. "Ordinarily we do not review the exercise of the trial judge's discretion in controlling jury arguments unless the impropriety of counsel's remarks is extreme and is clearly calculated to prejudice the jury in its deliberations." (Citations omitted.) *State v. Taylor*, 289 N.C. 223, 227, 221 S.E. 2d 359, 362 (1976). We are of the opinion that the trial judge did not abuse his discretion in allowing the district attorney to make these remarks.

In the conduct of this case we find no impropriety of sufficient moment to warrant a new trial. We, therefore, uphold the verdict and judgment and find

No error.

Judges WEBB and MARTIN (Harry C.) concur.