STATE OF NORTH CAROLINA v. MASON BRASWELL

No. 8329SC995

(Filed 3 April 1984)

**1. Criminal Law § 53— expert medical testimony—cause of injury**

Testimony by a physician who had been the victim's attending physician since a month after his injury that the victim's brain damage was caused by a gunshot wound to the head was admissible opinion testimony by an expert where the evidence showed that the physician had ample opportunity to acquire the factual knowledge upon which to base an expert opinion as to the cause of the injury.

**2. Criminal Law § 46— flight of defendant—jury argument—supporting evidence**

There was sufficient evidence to support the prosecutor's argument that defendant fled to Florida after shooting the victim where the evidence showed that the crime occurred in July of 1982; an officer testified that he was unable to locate defendant in July, August, and September of 1982; and defendant's wife testified that defendant was in Florida during the month of September 1982.

**3. Criminal Law § 102.6— impropriety in jury argument—no prejudicial error**

Although the prosecutor may have expressed a personal belief in arguing to the jury that this country is overrun by violence "because we compromise with violent people," such statement was at most of marginal impropriety and did not entitle defendant to a new trial.

**4. Criminal Law § 138— improper aggravating factors—use of deadly weapon—cruel offense**

In imposing a sentence for assault with a deadly weapon inflicting serious injury, the trial court erred in finding defendant's use of a deadly weapon as an aggravating factor since the use of a deadly weapon was an element of the offense. Also, the trial court erred in finding as an aggravating factor that the

offense was cruel where there was no evidence of special cruelty other than evidence showing that serious injury was inflicted. G.S. 15A-1340.4(a)(1).

Judge PHILLIPS concurring.

APPEAL by defendant from *Burroughs, Judge.* Judgment entered 3 February 1983 in Superior Court, HENDERSON County. Heard in the Court of Appeals 14 March 1984.

Defendant was convicted of assault with a deadly weapon inflicting serious injury under G.S. 14-32. We only briefly summarize the evidence here, and refer to other facts and circumstances as necessary in the body of this opinion.

On 25 July 1982, defendant, his girlfriend Elizabeth Mintz, and other individuals from the Henderson County area attended a campfire birthday party in a wooded area in Henderson County. There was uncontradicted testimony that most of the guests were drinking and some smoking marijuana; in particular, at about 1:30 a.m., Michael Pace, the victim, had become so intoxicated that his girlfriend and her sister began to help him to his truck. As the women attempted to assist him, Pace stumbled, and the three fell over Mintz's (now Elizabeth Mintz Braswell, defendant's wife) lounge chair. Mintz had a back problem and had recently been released from the hospital; she yelled out in pain.

The two women testified that they helped Mintz back into her chair, laid Pace down beside her with a cushion beneath his head, and walked away to get the truck and to get someone to assist them in getting Pace into his truck. Both women testified to hearing a gunshot, and one testified that she immediately turned around and saw defendant standing over Pace with a gun in his hand. The women also testified that Pace was bleeding from his head, and that it appeared that part of his brain was coming out of his skull.

Two other witnesses testified that they saw Pace trip over Mintz's chair, that they saw defendant striking Pace, then heard a noise, and saw defendant let go of Pace. However, both of those witnesses testified that they did not see a gun in defendant's hand. These witnesses helped defendant to his car and took him home.

Dr. William Hodges, a physician who treated Pace subsequent to the injury, testified over objection that the cause of Pace's brain damage was a gunshot wound, and that Pace will probably be severely paralyzed for the remainder of his life. The jury returned its verdict and at a subsequent hearing defendant was sentenced to ten years in prison. From the jury verdict and from the sentence imposed, defendant appeals.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Thomas H. Davis, Jr., for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Lorinzo L. Joyner, for defendant appellant.*

VAUGHN, Chief Judge.

[1] Defendant first argues that the trial court erred in admitting the testimony of Dr. William Hodges, who testified that Michael Pace's brain damage was caused by a gunshot wound to the head. We hold such testimony was properly admitted.

Dr. Hodges has been the victim's attending physician at the Veterans' Administration Hospital in Asheville since September 1982, approximately a month after the injury. He was found by the trial court to be an expert in internal medicine and therefore qualified to express opinions within that field. *State v. Moore,* 245 N.C. 158, 95 S.E. 2d 548 (1956) (competency of witness to testify as expert is matter within discretion of trial judge). Dr. Hodges testified that Pace was suffering from brain damage, and that medical records indicated that the cause of the injury was a gunshot wound to the head. Defendant's objection to this hearsay testimony was properly sustained. *State v. Hamilton,* 16 N.C. App. 330, 192 S.E. 2d 24 (1972).

After this objection was sustained, the prosecution rephrased its question, asking the doctor if he "knew" the cause of brain damage. Towards the end of its direct examination, the prosecution again asked Dr. Hodges if he had an opinion as to what caused the brain damage. Both times Dr. Hodges testified over defendant's objection that a gunshot wound caused the brain damage.

Defendant contends that Dr. Hodges was testifying to information of which he had no personal knowledge or, alternatively, that he gave opinion testimony unsupported by an adequate foundation. We find that Dr. Hodges' testimony as to the cause of Michael Pace's brain damage was admissible opinion testimony of a medical expert.

The basic principle governing expert testimony is that where an expert witness testifies as to facts based upon personal knowledge, that witness may testify directly in the form of an opinion. *State v. Mapp*, 45 N.C. App. 574, 264 S.E. 2d 348 (1980). Defendant insists Dr. Hodges lacked personal knowledge upon which to base his opinion. It is true that Dr. Hodges did not witness the scene of the victim's injury. However, a physician's opinion is rarely based on such eyewitness testimony; rather, admissible opinion testimony is usually based on observation and examination of the patient after the injury. *See, e.g., State v. Bright*, 301 N.C. 243, 271 S.E. 2d 368 (1980) (physician who treated victim in emergency room permitted to state opinion that bruises on a kidnapping and rape victim's face "looked as though that pattern could have been made by fingers"). The record discloses that Dr. Hodges, as the victim's treating physician since September 1982, had ample opportunity to acquire the factual knowledge upon which a medical expert's opinion testimony as to causation of an injury is typically based. *See State v. Atkinson*, 278 N.C. 168, 179 S.E. 2d 410 (1971) (in prosecution for rape, pathologist's testimony that victim's injuries "could have been caused by male organ" is admissible and does not invade province of jury).

It would have been perhaps preferable for the State to have developed a more detailed foundation for Dr. Hodges' medical opinion testimony; nevertheless, the foundation as laid at trial was legally sufficient. Where a proper foundation is laid, as here, any failure to bring out all the factors surrounding and supporting the opinion testimony goes to the weight to be given the testimony, and not to its admissibility. Eliciting the full factual basis for Dr. Hodges' opinion that Michael Pace's brain damage was caused by a gunshot wound was properly a matter for cross-examination. Defendant chose not to take advantage of the opportunity to challenge the factual basis for Dr. Hodges' opinion, asking him on cross-examination only a single question unrelated

to the opinion testimony. Defendant is not permitted to alter on appeal the strategy he chose at trial.

Defendant also assigns prejudicial error to two portions of the prosecution's closing argument. The defendant argues that the prosecutor improperly brought before the jury the fact that the defendant fled to Florida after he allegedly shot the victim. Defendant additionally contends that the prosecutor committed prejudicial error when he argued to the jury that this country is overrun by violence because "we compromise with violent people."

Attorneys are forbidden during jury argument to place before the jury "incompetent and prejudicial matters by injecting [their] own knowledge, beliefs, and personal opinions not supported by the evidence." *State v. Britt,* 288 N.C. 699, 711, 220 S.E. 2d 283, 291 (1975). Despite these prohibitions, attorneys enjoy great freedom in jury arguments, and a defendant is entitled to a new trial only when counsel's abuse of the privilege to forcefully persuade the jury is excessive.

> The latitude permitted in jury argument is controlled by the judge's discretion. . . . Ordinarily [the judge's] discretion is not reviewable "unless the impropriety of counsel's remarks is extreme and is clearly calculated to prejudice the jury in its deliberations. . . ." A new trial is awarded only in cases of extreme abuse in the argument.

*State v. Bailey,* 49 N.C. App. 377, 383-4, 271 S.E. 2d 752, 756, *review denied,* 301 N.C. 723, 276 S.E. 2d 288 (1980) (citations omitted; no new trial; solicitor's argument that the defendants were "lawless people" a mere "uncomplimentary characterization").

[2]  As to the prosecution's argument concerning the flight of the defendant, there was evidence in the record to support the prosecutor's statements. Defendant's wife testified that the defendant was in Florida during the month of September 1982; the detective assigned to defendant's case testified that he was unable to locate defendant in July, August, and September of 1982. This may not be conclusive evidence of flight; it is nonetheless supportive of flight, and we therefore hold that undue prejudice did not result from the prosecution's argument.

Furthermore, any erroneous statements of the law concerning flight were cured by the judge's preface to his charge that the jury is to apply the law given to them by the court, coupled with the District Attorney's statement that "The Court will instruct you, I believe, that flight is evidence of guilt. . . ." The court did not instruct the jury on flight; the court did, however, properly instruct the jury on all law pertinent to the case. "Under these circumstances, we cannot say that [any] misstatements of law contained in the argument of the prosecutor are so material and prejudicial as to require a new trial." *State v. Harris*, 290 N.C. 681, 696, 228 S.E. 2d 437, 445 (1976).

[3] Nor is the defendant entitled to a new trial because the State's attorney argued that this country is overrun by violence "because we compromise with violent people." Although counsel arguably expressed a personal belief, which expression is not allowed in jury argument, counsel's observation was at most a marginal impropriety. The statement did not create the material prejudice necessary to support an award of a new trial. *Cf. State v. Britt, supra* (new trial where jury told defendant had been on death row for prior conviction of first degree murder in same case, where prosecution continued to argue irrelevant principles of law even after court sustained defendant's objection, and prosecutor expressed his personal belief as to defendant's testimony).

[4] Although not entitled to a new trial, defendant is entitled to a new sentencing hearing. The crime for which defendant was convicted, assault with a deadly weapon inflicting serious injury, includes the element of use of a deadly weapon. G.S. 14-32(b). Defendant received a sentence in excess of the presumptive sentence based in part upon the trial court's finding of use of a deadly weapon as an aggravating factor. G.S. 15A-1340.4(a)(1) states that "[e]vidence necessary to prove an element of the offense may not be used to prove any factor in aggravation, and the same item of evidence may not be used to prove more than one factor in aggravation." *See State v. Abdullah*, 309 N.C. 63, 306 S.E. 2d 100 (1983) (sentence for armed robbery conviction cannot be enhanced by possession or use of deadly weapon, because such possession or use is element of crime). This Court has specifically held that the trial court, in sentencing, cannot rely upon the aggravating factor of the defendant's use of a deadly weapon when the defend-

ant is convicted of a G.S. 14-32 assault. *State v. Hammonds,* 61 N.C. App. 615, 301 S.E. 2d 457 (1983).

The same analysis applies to the trial court's finding that the offense was especially cruel. There was no evidence of special cruelty other than the evidence showing that serious injury was inflicted. There was, therefore, insufficient evidence to support that aggravating factor. In *State v. Hammonds, supra,* this Court awarded a new sentencing hearing in a G.S. 14-32 conviction, stating:

> The evidence showed that defendant approached the victim without provocation and shot him in the face. The use of a deadly weapon and the seriousness of the injury involved here may be evidence of an especially heinous, atrocious and cruel crime. However, the same evidence proved the deadly weapon and serious injury elements of the crime.

*Id.* at 616, 301 S.E. 2d at 458.

We hasten to add, however, that there may be cases where serious injury is inflicted but the evidence will also show the crime to have been especially heinous, atrocious or cruel. This is not true in the case before us.

An error in the application of aggravating factors can never be deemed harmless, *State v. Ahearn,* 307 N.C. 584, 602, 300 S.E. 2d 689, 698 (1983), and defendant is therefore entitled to a new sentencing hearing.

Remanded for resentencing.

Judges WHICHARD and PHILLIPS concur.

Judge PHILLIPS concurring.

Though I agree that error prejudicial to defendant has not been shown and that he would almost certainly be convicted if retried, some evidence that the court not only received, but assisted in presenting, was so grossly erroneous that it requires disapproval, lest it be repeated to another defendant's prejudice. A doctor, who never saw the victim of defendant's assault until two

months following the injury, was not merely permitted, but was directed, to answer the following question:

> Q. Do you *know* the cause of Michael Pace's brain damage? (Emphasis added.)

This manifestly improper question did not ask for the doctor's opinion, but his knowledge, which he did not have. And its erroneousness was accentuated by the fact that it had been asked before and answered sensibly, though unresponsively, that Pace's injury occurred two months before he met him. Nevertheless, instead of leaving the District Attorney to his own devices or suggesting that he ask a proper question, as would have been appropriate, His Honor admonished the witness *to listen to the question and answer it as stated*, and told the District Attorney, "ask him your question again." In that setting that the witness then professed to know what he obviously did not know, that the cause was a bullet wound, is not surprising. In a closer case this *aggravated impropriety on the court's part would require a new trial*, in my opinion.