STATE OF NORTH CAROLINA v. JERRY LEE MILLER

No. 365A84

(Filed 18 February 1986)

1. **Homicide § 21.6; Robbery § 4.6 — armed robbery — felony-murder — acting in concert**

   The evidence supported defendant's convictions of armed robbery and felony-murder in a convenience store parking lot under the theory of acting in concert where it tended to show that defendant convinced his twenty-year-old brother and eighteen-year-old friend to participate in a robbery of the convenience store and supplied them with transportation, weapons, socks to cover their hands, and masks; when a car drove into the parking lot during the robbery of the convenience store, defendant ordered his brother, who was serving as the lookout, to keep the passengers out of the store; shortly thereafter, the three gunmen rushed from the store and defendant participated in the robberies of the two victims by helping to surround their car and hold them at gunpoint; defendant's brother shot and killed one of the automobile occupants while robbing him; and defendant drove the getaway car and later distributed the proceeds of the robbery among the three participants.

2. **Criminal Law § 102.7 — jury argument — opinion as to credibility of witness — no gross impropriety**

   Assuming that the prosecutor's remarks in his jury argument concerning the abilities of a State's witness as an investigating officer amounted to an improper expression of opinion as to the witness's credibility, they were not so grossly improper that the trial judge was required to intervene *ex mero motu.*

3. **Criminal Law § 102.6 — jury argument — urging jury to do something about crime**

   The prosecutor did not exceed the bounds of permissible argument by encouraging the jury to consider their obligation to do something about serious crime.

4. **Criminal Law § 138 — aggravating factors — position of leadership — inducing others — sufficiency of evidence**

   The evidence supported the trial court's findings as factors in aggravation of defendant's punishment for an armed robbery in a convenience store parking lot that defendant occupied a position of leadership or dominance over the other participants in the commission of the offense and that he induced others to commit the crime where the evidence showed that defendant, who was twenty-six years old, convinced his twenty-year-old brother and eighteen-year-old friend to participate in robbing a convenience store and supplied them with transportation, weapons, socks to cover their hands, and masks; defendant later gave specific instructions as to each person's role in executing the convenience store robbery; when a car drove into the parking lot during the convenience store robbery, defendant ordered his brother, who was serving as the lookout, to keep the passengers out of the store; shortly thereafter, the three

gunmen rushed from the store and defendant participated in the robberies of the car's occupants by helping to surround the car and hold its occupants at gunpoint; and defendant drove the getaway car and later distributed the proceeds of the robbery among the three participants.

Justice EXUM concurs in the result.

THE defendant was convicted before *Judge Snepp* and a jury at the 4 April 1984 Criminal Session of HENDERSON County Superior Court of first degree murder, assault with a deadly weapon inflicting serious injury, and three counts of armed robbery. Following a sentencing hearing, the defendant was sentenced to life imprisonment on the murder conviction and to consecutive terms of forty years on the first armed robbery conviction, thirty years on the second armed robbery conviction and ten years on the assault conviction. Judge Snepp arrested judgment on the third armed robbery conviction because that offense served as the predicate felony for defendant's conviction of first degree murder under a theory of felony murder. The defendant appealed the life sentence to this Court as a matter of right pursuant to N.C.G.S. § 7A-27(a), and on 13 March 1985 we granted his motion to bypass the Court of Appeals on the remaining convictions pursuant to N.C.G.S. § 7A-31(a).

The State's evidence tended to show that on the night of 7 August 1982 the defendant, the defendant's brother Tim Miller, and Donnie Rice attended a party in South Carolina. The defendant left the party with Miller and Rice at around 1:30 a.m. and on the way to Hendersonville, North Carolina on Interstate 26, the defendant asked his companions if they would agree to help him rob a convenience store. Tim Miller and Rice assented to the plan. Defendant provided weapons for the two of them, giving Rice a .22 caliber pistol and his brother a shotgun. He admonished each of them, however, not to shoot anyone. Defendant was also armed with a pistol. Defendant gave Tim Miller and Rice masks, and socks to cover their hands. When the three arrived at Norm's Minute Mart on Upward Road in Henderson County, they parked the car across the street and all three approached the store. The defendant and Rice entered the store and Tim Miller remained outside.

Vernon King testified that during the early morning hours of 8 August 1982 he was working alone at Norm's Minute Mart. He

remembered that on that morning he was in the cooler when he heard a voice behind him. He turned around and "looked right square into a pistol" pointed at him by a black male wearing a red ski mask. This masked man was identified by Donnie Rice as the defendant. According to King, the masked gunman asked him where the safe was located. When King responded that there was no safe, the defendant struck King in the face with the pistol and forced him to the back of the store. At that time, King noticed another black male with a shotgun near the front door of the store and a third man at the cash register. The defendant then shoved King toward the register and ordered him to open the drawer. One of the men grabbed money and food stamps. King testified that he was shot in the shoulder as he stepped back from the register. He fell back into a chair and heard the defendant tell the others to "get cigarettes and stuff." At that point, the men heard the roar of an automobile engine and Rice alerted the defendant that a car had driven into the store parking lot. The defendant told his brother to "keep the white trash from coming in." King was thrown into the cooler and the gunmen ran out the door.

Rice testified that when he and the defendant came outside, Tim Miller was already at the car with his shotgun. Rice stated that the driver attempted to leave the parking lot but they "all surrounded the car." Rice positioned himself next to the driver, Tim Miller remained on the passenger side, and the gunmen began cursing the occupants and demanded that they get out of the car.

The jury heard testimony from Johnny Corpening and Sherri Heatherly regarding the events that transpired in the convenience store parking lot during the early morning hours of 8 August 1982. Heatherly testified that she and her friends Anthony Corn and Johnny Corpening drove to Norm's Minute Mart to purchase cigarettes. She stated that she saw someone at the end of the check-out counter wearing a mask and that she told Corpening, who was driving the car, to leave. Before Corpening could back up, some masked men with guns ran from the store. One gunman pointed a pistol at Corpening through the car window and another was on the passenger side of the car. Heatherly testified that the masked gunmen wanted money and "everyone proceeded to hand everything they had to them." Corpening stated

that he saw three gunmen and that "they started ordering us out of the car." Each of the occupants followed the gunmen's demands. Corpening said that after he got out of the car, one gunman ordered him to throw his money out, and he threw about $47.00 on the pavement. The money scattered, and as the gunman on the driver's side of the car reached down to gather it, Corpening ran toward the store. He heard gunshots as he ran away.

Sherri Heatherly testified that when she and Anthony Corn got out of the car, the gunman armed with the shotgun ordered her and Corn to the back of the car. Heatherly said that Corn stood between her and the gunman, shielding her with his body. When Corpening ran for the store, Heatherly testified that a shot was fired at him. Moments later, a second shot was fired and she felt Corn "go up against her back" and slowly fall to the ground. She stated that she then saw a lot of foot movement and as the robbers fled she heard someone yell, "Let's get out of here," and "Why did you shoot?"

Defendant presented three alibi witnesses. Their testimony tended to show that defendant was in New York on 8 August 1982.

*Lacy H. Thornburg, Attorney General, by Reginald L. Watkins, Special Deputy Attorney General, for the State.*

*Adam Stein, Appellate Defender, by David W. Dorey, Assistant Appellate Defender, for defendant-appellant.*

BILLINGS, Justice.

The defendant brings forward three assignments of error. He argues that: (1) the evidence was insufficient as a matter of law to prove that the defendant was acting in concert with Donnie Rice and Tim Miller in the armed robbery of Johnny Corpening and the armed robbery and murder of Anthony Corn; (2) the trial judge committed reversible error in overruling his objection to an improper jury argument by the prosecutor; and (3) the trial court erred in finding as aggravating factors with respect to the Corpening armed robbery that the defendant occupied a position of leadership or dominance over the other participants in the commission of the offense and that he induced others to participate in the robbery.

[1]   We first consider the defendant's contention that his convictions for the armed robbery of Johnny Corpening and the armed robbery and murder of Anthony Corn must be reversed for failure of the State to prove that defendant acted in concert with others to commit these crimes.

It is true that the State prosecuted the defendant for the felony murder of Anthony Corn on the theory that Tim Miller killed Corn during the perpetration of an armed robbery and defendant acted in concert with Tim Miller in committing this robbery. The basis of the defendant's conviction for armed robbery of Johnny Corpening was that defendant acted in concert with Rice in committing this offense.

Under the principle of acting in concert, a person may be found guilty of an offense if he is "present at the scene of the crime and the evidence is sufficient to show he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime." *State v. Joyner*, 297 N.C. 349, 357, 255 S.E. 2d 390, 395 (1979). The defendant argues that his convictions for the armed robbery of Corpening and the felony murder of Corn cannot be sustained under a theory of acting in concert because the State presented no evidence that defendant shared a common plan or purpose with Tim Miller or Rice to commit the robberies in the convenience store parking lot. Defendant concedes that the evidence shows that he invited Rice and Tim Miller to participate in the robbery of the convenience store, but he maintains that there is no record evidence which shows that he did anything to effectuate the additional robberies or that his plan to rob the store encompassed a scheme to rob innocent bystanders who posed a threat to the successful completion of the original crime. In support of his argument that the State's case is insufficient under a theory of acting in concert, the defendant cites certain testimony of prosecution witnesses which, he claims, *negates* an inference that defendant had a plan to execute any crime other than the robbery of Norm's Minute Mart. He notes Rice's testimony that defendant told his companions on the way to Hendersonville not to shoot anyone, and Sherri Heatherly's testimony that as the robbers fled, one of them shouted something like "Why did you shoot?"

We do not agree with the defendant's assertion that the evidence fails to show his participation in the robberies of Corn and Corpening. The defendant himself initiated an encounter with the three individuals who drove in while the convenience store robbery was in progress. The defendant ordered his brother, who was armed with a firearm which the defendant had provided him, to "stop the white trash from coming in." Donnie Rice's testimony places the defendant outside when the robberies were committed and reveals that the defendant helped to effectuate them. Rice stated: "We started out the door and the car was backing out and we all surrounded the car." Johnny Corpening's testimony also implicates the defendant. Corpening testified that he saw three gunmen, and he stated that "[t]hey started ordering us out of the car." Finally, we deem it significant that defendant shared in the proceeds of the Corn and Corpening robberies.

In reaching our conclusion that the evidence supports the defendant's convictions of armed robbery and felony murder under a theory of acting in concert, we also rely on the following statement of the law from this Court's opinion in *State v. Westbrook*, 279 N.C. 18, 41-42, 181 S.E. 2d 572, 586 (1971), *death penalty vacated*, 408 U.S. 939, 33 L.Ed. 2d 761 (1972):

> [I]f two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose; that is, the common plan to rob, or as a natural or probable consequence thereof.

*See also State v. Oliver*, 302 N.C. 28, 274 S.E. 2d 183 (1981).

Defendant himself participated in the perpetration of the crimes in the convenience store parking lot, and these crimes were committed, at least in part, to ensure the successful completion of the original robbery. The defendant's arguments that the State's evidence was insufficient as a matter of law to prove that he was acting in concert with Tim Miller and Donnie Rice are therefore without merit.

The defendant next contends that the trial court committed reversible error by overruling defense counsel's objection to the following remarks by the prosecutor during his closing argument to the jury:

I'll guarantee you one thing if David Carpenter or anybody else other than the three men that's been named had anything to do with this crime, Steve Morely [sic] [the police officer in charge of the investigation] would have had them sittin' right over at that table right there. They did an excellent job investigating this case but there's not one thing that they can do. The buck stops in these 12 seats right here. If anything is going to be done about serious crime — this case . . .

    MR. HARRIS: Objection.

    THE COURT: Overruled.

or any other case where 12 people can come in and occupy these 12 seats, that's what if comes down to and I know that you're conscientious individuals and people with abundance of reason and common sense and I'm going to sit down here in just a moment confident that you're going to do the right thing and I suggest to you the right thing is to find Jerry Miller guilty of three counts of armed robbery . . . .

The defendant argues that this prosecutorial argument improperly communicated to the jury the message that defendant's arrest by State's witness Morley was a guarantee of his guilt. He also takes the position that the trial court erroneously permitted the district attorney to exhort the jurors "to decide guilt or innocence out of a preconceived sense of civic duty."

[2] We do not consider the defendant's first argument, that the prosecutor erred by referring to Steve Morley's abilities as an investigating officer, for the reason that no objection was made to this line of argument at trial. It was only when the district attorney moved on to the argument regarding the jurors' obligation to do something about serious crime that defense counsel interposed an objection. Therefore, assuming *arguendo* that the prosecutor's reference to Officer Morley amounted to an improper expression of personal opinion as to the witness's credibility, the trial judge's failure to recognize the error and intervene *ex mero motu* is reviewable only if the improper argument amounts to gross impropriety. *State v. Johnson*, 298 N.C. 355, 259 S.E. 2d 752 (1978); *State v. Kirkley*, 308 N.C. 196, 302 S.E. 2d 144 (1983); *State v. Craig*, 308 N.C. 446, 302 S.E. 2d 740 (1983). These few remarks

could not possibly have influenced the jury's verdict in light of the overwhelming evidence of the defendant's participation in the crimes charged. Neither were they so grossly improper that the trial judge erred in failing to intervene *ex mero motu.*

[3] Turning to the defendant's contention that the prosecutor exceeded the bounds of permissible argument by encouraging the jury to consider thoughtfully their obligation to do something about serious crime, we note that counsel must be allowed wide latitude in the argument of hotly contested cases. *State v. Hockett,* 309 N.C. 794, 309 S.E. 2d 249 (1983); *State v. Monk,* 286 N.C. 509, 212 S.E. 2d 125 (1975). Whether counsel abuses this privilege is a matter which rests within the sound discretion of the trial judge, and absent such gross impropriety in the argument as would be likely to influence the jury's verdict, this Court will not disturb the trial judge's discretionary ruling. *State v. Myers,* 299 N.C. 671, 263 S.E. 2d 768 (1980); *State v. Covington,* 290 N.C. 313, 226 S.E. 2d 629 (1976).

Applying these legal principles to our review of the prosecutor's argument in this case, we find no such gross impropriety as would justify a reversal of the defendant's conviction. The argument made in the instant case carries the same import as that made by the prosecutor in *State v. Britt,* 291 N.C. 528, 231 S.E. 2d 644 (1977). In *Britt,* the district attorney informed the jury in his closing argument that "only jurors may fail to bring criminals to justice in our system." This Court dismissed the defendant's contention that this prosecutorial comment was improperly permitted by saying that "the district attorney was simply explaining how our legal system works. We do not see how this could be prejudicial to defendant." *Id.* at 539, 231 S.E. 2d at 652. A similar jury argument was made by the prosecutor in *State v. Salem,* 50 N.C. App. 419, 274 S.E. 2d 501, *disc. rev. denied,* 302 N.C. 401, 279 S.E. 2d 355 (1981). In that case, the district attorney told the jury that they had a responsibility like that of law enforcement officials to "clean up crime in this county." *Id.* at 431, 274 S.E. 2d at 509. The court held that the trial judge did not abuse his discretion in overruling the defendant's objections to these remarks. *See also State v. Locklear,* 291 N.C. 598, 604, 231 S.E. 2d 256, 260 (1977) (prosecutor argued it was up to jury to either find defendant guilty of first degree murder or "let him walk out of the courtroom"); *State v. Peterson,* 149 N.C. 533, 536, 63 S.E. 87, 88

(1908) ("It has been a long time since such a crime as this has happened in Yancey County, because you have punished crime and put a stop to it."); *State v. Braswell*, 67 N.C. App. 609, 613, 313 S.E. 2d 216, 219 (1984) (district attorney said this country overrun by violence because "we compromise with violent people").

On the basis of the above-cited authorities, we hold that the trial judge did not abuse his discretion in overruling the defendant's objection to the prosecutor's argument.

[4] Finally, we turn to the defendant's arguments relating to the sentence he received for the Corpening armed robbery. The trial court found in aggravation of the defendant's punishment for this crime that he occupied a position of leadership or dominance over the other participants in the commission of the offense and that the defendant induced others to commit the crime. N.C.G.S. § 15A-1340.4 (1983). The defendant here makes an argument similar to that advanced under his first assignment of error. He takes the position that these aggravating factors are not supported by the evidence because the Corpening robbery was separate and distinct from the one committed in Norm's Minute Mart and defendant had no knowledge of Donnie Rice's intention to rob Corpening.

For many of the same reasons set forth in our discussion of the defendant's first argument, we reject his contention that the trial judge erred in finding these aggravating factors. The defendant, who was 26 years old, masterminded this entire criminal escapade. He convinced his 20-year-old brother and 18-year-old Donnie Rice to participate, and he supplied them with transportation, weapons, masks to conceal their identities, and socks to prevent detection of their fingerprints. He later gave specific instructions as to each person's role in executing the convenience store robbery. When Corpening's car drove into the parking lot, the defendant ordered his brother, who was serving as the lookout, to keep the passengers out of the store. Shortly thereafter, the three gunmen rushed from the store and the defendant participated in the robberies of Corpening and Corn by helping to surround the car and hold its occupants at gunpoint. The defendant also drove the get-away car and later distributed the proceeds of the robbery among the three participants.

State v. Miller

We hold that the aggravating factors found by the trial judge are supported by the evidence and therefore the sentence imposed for the Corpening armed robbery should not be disturbed.

The defendant received a fair trial, free of prejudicial error.

No error.

Justice EXUM concurs in the result.