STATE OF NORTH CAROLINA v. LEROY McNEIL

No. 37A87

(Filed 9 February 1989)

1. **Criminal Law § 92.4— murder—two charges against same defendant—joinder proper**

    The trial court did not err by allowing two murder charges to be joined for trial where there was sufficient evidence of a transactional connection to support joinder of the offenses in that defendant's need for money was a common thread which motivated him to begin his search for victims and led to the eventual robberies and murders of both victims. N.C.G.S. § 15A-926(a).

2. **Homicide § 18.1— premeditation and deliberation—evidence sufficient**

    There was sufficient evidence of premeditation and deliberation to deny defendant's motion to dismiss a charge of first degree murder where the State's evidence tended to show that defendant needed money to pay rent and other bills; decided that his victim might have some money; called her and persuaded her to go out with him and Ms. McNeil; went to her house and picked her up; had a pistol under the seat which he put in his belt before he got out of the car; shot his victim in the head when she got out of the car; took her keys and money; and left her body by the side of the road.

3. **Jury § 6.3— understanding of parole—defendant not allowed to question potential jurors—no error**

    There was no error in a prosecution for two first degree murders in denying defendant's request to question potential jurors as to their understanding

State v. McNeil

of the length of time a person would serve if sentenced to life imprisonment for first degree murder because parole procedures are irrelevant to a sentencing determination.

**4. Jury § 7.11— murder—jurors excused for cause—no opportunity for rehabilitation**

There was no error in a prosecution for two first degree murders in excusing three prospective jurors for cause due to their feelings about the death penalty without inquiry as to their ability to follow the law and without giving defendant the opportunity to question those prospective jurors where it was evident that those jurors' views on capital punishment would impair their ability to perform their duties as jurors and nothing in the record indicated that any of the prospective jurors would have been rehabilitated by defendant.

**5. Jury § 7.7— murder—denial of challenges for cause—peremptory challenges not exhausted**

Defendant did not preserve his right to appeal the denial of his challenges for cause of three prospective jurors in a murder prosecution where he used peremptory challenges to excuse two of the jurors and the record reveals he had one remaining peremptory challenge which he could have used. N.C.G.S. § 15A-1214(h) and (i).

**6. Criminal Law § 102.6— murder—prosecutor's closing argument—failure to intervene ex mero motu**

The trial court did not err in a prosecution for two first degree murders by failing to intervene *ex mero motu* in the prosecutor's closing argument where the prosecutor argued that he represented the victims, but did not mention any of the personal characteristics of the victims, nor did he discuss the impact of their deaths on their families; there was a reasonable inference from the evidence that, before defendant killed one victim, he removed her clothes and she begged for her life; and the prosecutor's argument concerning what the victim must have thought as she died, which was based on facts in evidence and on reasonable inferences from those facts, was not so grossly improper as to require the court to intervene.

**7. Criminal Law § 135.9— murder—nonstatutory mitigating circumstance of remorse—refusal to submit to jury—no error**

The trial court did not err in two murder prosecutions by refusing to submit the nonstatutory mitigating circumstance of remorse based on defendant's confession shortly after the murders took place where the Supreme Court could find no expression of remorse in the statement and defendant's statement to the jury was made in allocution while he was not under oath or subject to cross-examination.

**8. Criminal Law § 102.6— murder—sentencing—failure to intervene ex mero motu in prosecutor's argument—no error**

The trial court did not err in the sentencing portion of a prosecution for two first degree murders by failing to intervene *ex mero motu* in the prosecutor's closing argument because it was not improper for the prosecutor to refer to defendant's prior conviction for involuntary manslaughter, which was in evi-

**State v. McNeil**

dence; the prosecutor's question, "Is three not enough?" did not require intervention; the prosecutor's address to the women of the jury did not require intervention because the prosecutor did not make a personal plea to each female juror, rather, he called them by name and then spoke to them collectively; although the prosecutor asked the jury what message it would send to the community, he did not go outside the record and appeal to the jury to convict defendant because other murderers had killed other victims, nor did he encourage the jury to base its determination on sentiment; asking the jury to consider other cases in which death sentences were imposed was not so grossly improper as to require intervention *ex mero motu*; and telling the jury that defendant, not the jury, would be responsible for his execution was also not so grossly improper as to require intervention *ex mero motu.*

**9. Criminal Law § 135.8— murder—instruction on previous felony involving violence**

There was no plain error in a prosecution for two first degree murders in the court's instruction that the aggravating factor of a previous felony conviction involving the use of violence to the person would apply to both murders, if it applied at all, and that voluntary manslaughter is a crime involving the use of violence to the person where the State introduced evidence of defendant's prior conviction for the voluntary manslaughter of his former wife and defendant did not offer evidence that the killing of his former wife did not involve violence. This case involves one defendant on trial for two murders in which the evidence supporting the aggravating circumstance was identical in both cases.

**10. Criminal Law § 135.8— murder—especially heinous, atrocious or cruel**

There was no error in a prosecution for two first degree murders by submitting the aggravating circumstance that the murder of one victim was especially heinous, atrocious or cruel where the evidence tended to show that the defendant not only choked and shot the victim, but that he beat her, stabbed her, hit her in the face with a wooden frame which had nails sticking out of it, and pushed feces into her vagina.

**11. Criminal Law § 135.8— murder—aggravating circumstance—committed while defendant engaged in commission of robbery**

There was no error in the prosecution of defendant for two first degree murders by submitting as an aggravating circumstance that each murder was committed while defendant was engaged in the commission of a robbery because defendant was convicted of both first degree murders based on premeditation and deliberation as well as on felony murder.

**12. Constitutional Law § 80— death penalty issues—not unconstitutional**

Death qualification of a jury is not unconstitutional; N.C.G.S. § 15A-2000 is not unconstitutionally vague and overbroad, either facially or as applied; and N.C.G.S. § 15A-2000(e)(9), the heinous, atrocious, or cruel aggravating circumstance, has not been applied unconstitutionally.

**13. Criminal Law § 135— death penalty—sentencing issues—no error**

There was no error in the sentencing portion of a first degree murder prosecution in instructing the jury that it had a duty to return a recommenda-

State v. McNeil

tion of death if it found that the mitigating circumstances were insufficient to outweigh the aggravating circumstances and that the aggravating circumstances were sufficiently substantial to call for the death penalty; there was no error in failing to instruct the jury that the State had the burden of proving the nonexistence of each mitigating circumstance beyond a reasonable doubt and in placing the burden on defendant to prove each mitigating circumstance by a preponderance of the evidence; and there was no error in instructing the jurors that they must be unanimous before they could find the existence of a mitigating circumstance.

14. **Weapons and Firearms § 1— murder—instruction that rifle and pistol are deadly weapons—no error**

The trial court did not err in a murder prosecution by instructing the jury that a rifle and a pistol are deadly weapons as a matter of law.

15. **Criminal Law § 135.10— death penalty—not disproportionate**

Death penalty recommendations were not excessive or disproportionate to the penalty in similar cases where the case involved two premeditated and deliberated first degree murders; the evidence showed that defendant killed one victim to get money after spending his money on alcohol; defendant persuaded the victim to get into his car, planned to rob her, drove her to an isolated area, then robbed and brutally murdered her; defendant continued to reside next door to the building where her body lay after the murder; he planned to rob his next victim two days later, after another drinking spree; defendant called her and invited her to go out with him; and he then drove her to an isolated area, shot her, and stole several things from her apartment. Furthermore, the jury found that defendant had previously been convicted of a felony involving the use of violence to the person.

Chief Justice EXUM concurring.

Justice FRYE dissenting as to sentence.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from judgments imposing death sentences entered by *Brewer, Jr., J.*, at the 30 April 1984 Criminal Session of Superior Court, WAKE County. Heard in the Supreme Court 9 May 1988; additional arguments heard 22 August 1988.

*Lacy H. Thornburg, Attorney General, by Ellen B. Scouten, Assistant Attorney General, for the State (original brief and argument); Lacy H. Thornburg, Attorney General, James J. Coman, Senior Deputy Attorney General, William N. Farrell, Jr., Special Deputy Attorney General, Joan H. Byers, Special Deputy Attorney General, Barry S. McNeill, Assistant Attorney General, and Ellen B. Scouten, Assistant Attorney General, for the State (supplemental brief and argument).*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant-appel-*

*lant (original brief and argument); Malcolm Ray Hunter, Jr., Appellate Defender, Louis D. Bilionis, Assistant Appellate Defender, and Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellant (supplemental brief and argument).*

*E. Ann Christian and Robert E. Zaytoun for North Carolina Academy of Trial Lawyers, amicus curiae.*

*John A. Dusenbury, Jr. for North Carolina Association of Black Lawyers, amicus curiae.*

WHICHARD, Justice.

Defendant was convicted of two counts of first degree murder on the basis of premeditation and deliberation and under the felony murder rule. The court submitted and the jury found three aggravating circumstances in the murder of Elizabeth Stallings: defendant previously had been convicted of a felony involving the use of violence to the person, the murder took place during the commission of robbery with a firearm, and the murder was especially heinous, atrocious or cruel. The court submitted and the jury found two aggravating circumstances in the murder of Deborah Fore: defendant previously had been convicted of a felony involving the use of violence to the person, and the murder took place during the commission of robbery with a firearm. In both cases, the court submitted the following possible mitigating circumstances: defendant has no significant history of prior criminal activity; defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired; defendant confessed to the crime shortly after the crimes were committed; defendant has an I.Q. of seventy-eight and is borderline mentally retarded; defendant had been a good and useful employee of Rea Construction Company prior to the events of April 1983; and any other circumstance or circumstances arising from the evidence which the jury deems to have mitigating value. The jury found one or more of those mitigating circumstances, without specifying which ones. Upon the jury's recommendation, the trial court sentenced defendant to death in both cases. We find no error.

The evidence presented by the State tended to show that on 8 April 1983 defendant and Penny Faye McNeil[1] had been drinking alcoholic beverages and discussing their need for money to pay rent. They went out driving around Raleigh. While driving, defendant saw Elizabeth Stallings, whom neither he nor Ms. McNeil knew, walking down the street. Defendant asked her if she wanted a ride. She got in the car and told defendant that she was going to the post office to get food stamps. Defendant drove her there and told her he would wait for her. After Ms. Stallings got out of the car, defendant told Ms. McNeil that he was going to rob Ms. Stallings. When Ms. Stallings came back out, defendant convinced her to go with them to have a beer and get some cocaine.

Defendant drove to a vacant house next door to his home. Defendant, Ms. McNeil, and Ms. Stallings went in the vacant house. Defendant grabbed Ms. Stallings around the neck, flipped out a knife, and forced her into the bedroom to the closet. He asked her for the food stamps. She gave them to defendant, then he gave them to Ms. McNeil. He choked Ms. Stallings until she was unconscious. Defendant asked Ms. McNeil to go next door and get his rifle, which she did; then he told her to leave the room. After she left the room, she heard a shot. Defendant took off some of Ms. Stallings' clothes so it would look like someone had raped and robbed her. Defendant later sold the food stamps for around $109.00. He also sold a ring he took from her finger.

Dr. Gordon LeGrand, the pathologist who performed the autopsy on Ms. Stallings' body, testified that, in his opinion, she died as a result of the bullet wound to her head. He testified that she also had a stab wound in her chest, penetrating her diaphragm, liver and stomach, and an abdominal wound caused, in his opinion, by blunt trauma such as the impact of a fist or foot. There were bruises and abrasions on her left arm, left hand, left shoulder, right shoulder, right buttock, and left eyebrow. There was a wound below the left eye. A broken window frame with

---

1. In this appeal, both parties have referred to Ms. McNeil as defendant's wife. However, upon hearing a motion in limine, the trial court found that defendant's marriage to Linda Faye Harrington had not been legally dissolved when defendant purported to marry Penny Faye Pharr (McNeil) in Dillon, South Carolina in December 1982. The court concluded that defendant was not legally married to Ms. McNeil.

nails sticking out was found at the crime scene; Dr. LeGrand testified that the wound under the eye could have been caused by a blow with the window frame. Dr. LeGrand testified that, in his opinion, the stab wound, the abdominal wound, and the wounds around the left eye were premortem wounds. There was fecal matter around the anal orifice and inside the vagina. Dr. LeGrand testified that feces are "often present in the agonal phase, just prior to death, if there's any kind of struggle, or stress, or whatever, loss of continent [sic] of the bowel." In his opinion it would have taken a probing force to insert feces into the vagina.

After the murder of Ms. Stallings, defendant and Ms. McNeil went to several places and drank alcoholic beverages. On 9 April 1983, the next day, they drank most of the day. On 10 April 1983 they continued to drink. Defendant told Ms. McNeil that they would need money to pay the rent because they had "rode around and drinked up the money." Defendant said that they might get money from Deborah Fore. Defendant called Ms. Fore and talked her into going out with them.

Defendant and Ms. McNeil went to Ms. Fore's home. She went with them to a store. Defendant then drove out into the country. He stopped the car, got his pistol from under the seat, put it in his belt, and got out of the car. He told the women that they had a flat tire. Ms. Fore got out of the car. Defendant shot her in the head. He took her keys and a dollar bill, then left her body by the side of the road. Defendant and Ms. McNeil went to Ms. Fore's apartment, used her key to get inside, and stole her television, her pocketbook, and a set of rings. Defendant drove to a teller machine and tried unsuccessfully to get money with Ms. Fore's teller card. He later dropped her pocketbook into an abandoned well in his back yard and sold for $90.00 the pistol he had used to kill Ms. Fore and the rifle he had used to kill Ms. Stallings.

Defendant presented no evidence during the guilt-innocence phase of the trial. During the sentencing phase, he called two witnesses. Dr. Selwyn Rose, a psychiatrist, testified that defendant is an alcoholic and, prior to the time of the murders, defendant and Ms. McNeil spent most of their money drinking heavily on the weekends. Al Peace testified that defendant was a good employee who worked well with others, but that he was often late to work or absent from work, particularly on Fridays.

## GUILT PHASE

[1]  Defendant first contends that the trial court erred in allowing the two murder charges to be joined for trial. He argues that the murders were not related transactionally. We disagree.

The State made a pretrial motion to consolidate for trial three first degree murder charges against defendant. The three crimes with which defendant was charged occurred within a period of eight days. The court allowed the State's motion to join the Stallings and Fore cases, but denied the State's motion to join the third case.

The statute allowing joinder of offenses provides:

(a) Joinder of Offenses. — Two or more offenses may be joined in one pleading or for trial when the offenses, whether felonies or misdemeanors or both, are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan.

N.C.G.S. § 15A-926(a) (1988). The decision to consolidate for trial cases having a transactional connection is within the discretion of the trial court and, absent a showing of abuse of discretion, will not be disturbed on appeal. *State v. Kornegay*, 313 N.C. 1, 23-24, 326 S.E. 2d 881, 898 (1985).

Defendant argues that consolidation of the two cases for trial was improper because the cases had no "transactional connection" necessary for proper joinder under N.C.G.S. § 15A-926(a). Our review of the evidence, however, shows ample support for the trial court's decision to join the two cases. The evidence showed that defendant, on the weekend of the murders, needed money to pay his rent and other bills. He apparently went out to find someone to rob on 8 April 1983. He got Ms. Stallings to ride in the car with him and Ms. McNeil, then he drove to an empty house, where he robbed and murdered her. On 10 April 1983, defendant told Ms. McNeil that they still needed money because they had spent what they had on alcohol. He apparently planned to rob Ms. Fore. He got her to ride in the car with him and Ms. McNeil. He drove out in the country, killed her, then stole several items from her apartment. These two robberies and murders were acts constituting parts of defendant's plan to obtain money for rent and

other bills. He carried out his plan by getting each woman into his car, then driving to another location and killing her.

In *Kornegay*, the trial court consolidated for trial a charge of obtaining property by false pretenses, a charge of embezzlement, and a charge of malfeasance of a corporate agent. *Kornegay*, 313 N.C. at 23, 326 S.E. 2d at 898. The evidence there showed that the defendant's act of obtaining funds by false pretenses from a client was part of his scheme to embezzle funds from his law firm. *Id.* at 24, 326 S.E. 2d at 898. We held that the trial court did not abuse its discretion in joining the offenses because "[t]he common thread connecting the crimes is defendant's shortage of ready cash in April of 1982." *Id.* In the case before us, the "common thread" connecting the crimes was defendant's need for cash to pay his rent and other bills. This need for money motivated him to begin his search for victims and led to the eventual robberies and murders of Ms. Stallings and Ms. Fore two days apart. We hold that there is sufficient evidence of a "transactional connection" to support joinder of the offenses. Therefore, the trial court did not abuse its discretion in consolidating the two cases for trial.

[2] Defendant next contends that the trial court erred in denying his motion to dismiss the charge of first degree murder of Ms. Fore. He argues that there was insufficient evidence to prove premeditation and deliberation.

Premeditation and deliberation are necessary elements of first degree murder. *State v. Propst*, 274 N.C. 62, 71, 161 S.E. 2d 560, 567 (1968). Premeditation means that the defendant thought out the act beforehand for some length of time, however short. *State v. Jackson*, 317 N.C. 1, 23, 343 S.E. 2d 814, 827 (1986), *vacated on other grounds*, 479 U.S. 1077, 94 L.Ed. 2d 133 (1987). "Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *Id.* The State may prove the elements of premeditation and deliberation by circumstantial evidence as well as by direct evidence. *Id.* Among the circumstances to be considered in determining whether a defendant acted after premeditation and deliberation are the want of provocation by the victim and the defendant's conduct before and after the killing. *Id.*

The State's evidence tended to show that defendant needed money to pay rent and other bills and decided that Ms. Fore might have some money. Defendant called her and persuaded her to go out with him and Ms. McNeil. They went to her house and picked her up. Defendant had a pistol under the seat. Before he got out of the car, he took the pistol and put it in his belt. When Ms. Fore got out of the car, he shot her in the head. He then took her keys and money and left her body by the side of the road. This evidence is sufficient to support a finding of premeditation and deliberation. Therefore, we hold that the trial court did not err in denying defendant's motion to dismiss.

[3] Defendant next contends that the trial court erred in denying his request to question potential jurors as to their understanding of the length of time a person would serve if sentenced to life imprisonment for first degree murder. The following exchange took place when defense counsel attempted to elicit this information from a potential juror on voir dire:

Q. Do you think that life imprisonment means an individual would stay in jail for the rest of his natural life?

MR. STEPHENS [prosecutor]: Objection.

COURT: Sustained.

Q. Do you understand that a person who is sentenced to life imprisonment after being convicted of first degree murder is not entitled to be released?

MR. STEPHENS: Objection.

COURT: Sustained.

Defendant argues that he needed this information to exercise effectively his challenges for cause and his peremptory challenges. He argues that misconceptions of jurors about the possibility of early parole for a defendant sentenced to life imprisonment create an unacceptable risk that the jury will sentence that defendant to death.

Defendant cites *King v. Lynaugh*, 828 F. 2d 257 (5th Cir. 1987), in support of his argument. In *King*, the appeals panel held that a defendant's Sixth and Fourteenth Amendment rights were infringed when the trial court refused to allow defense counsel to

ask questions directed toward determining whether venire members had misconceptions about parole law that might bias them in favor of capital punishment. The panel therefore ordered a new sentencing hearing. *King*, 828 F. 2d at 261-62.

Since the filing of briefs and the presentation of the initial oral arguments in this case, the Fifth Circuit Court of Appeals, after a rehearing *en banc*, has reversed the panel decision in pertinent part. *King v. Lynaugh*, 850 F. 2d 1055 (5th Cir. 1988). The court stated:

> We . . . are unable to distinguish possible prejudice based on jurors' misconceptions about parole law from "a host of other possible similar prejudices." The views of a lay venireman about parole are no more likely to be both erroneous and prejudicial than are his views on the defendant's right not to take the stand, the law of parties, the reasonable doubt standard, or any other matter of criminal procedure. It is difficult to conceive how we could constitutionalize the inquiry concerning Texas parole while leaving these similar but also potentially influential matters to the broad discretion of the state trial court. . . . Deference to the state courts in those matters counsels deference here as well. Interrogating veniremen about Texas parole law . . . does not approach a level of constitutional sensitivity.

*Id.* at 1060 (citations omitted).

This Court has held that the possibility of parole cannot be considered by a jury during sentencing. *State v. Robbins*, 319 N.C. 465, 356 S.E. 2d 279, *cert. denied*, --- U.S. ---, 98 L.Ed. 2d 226 (1987); *State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569, *cert. denied*, 459 U.S. 1080, 74 L.Ed. 2d 642 (1982). In *Robbins*, the jury returned to the courtroom to question whether it had the right to recommend a life sentence without the possibility of parole. The trial court responded by giving the following instruction, which has evolved from this Court's decision in *State v. Conner*, 241 N.C. 468, 85 S.E. 2d 584 (1955):

> The question of eligibility for parole is not a proper matter for you to consider in recommending punishment, and it should be eliminated entirely from your consideration and dismissed from your minds.

In considering whether to recommend death or life imprisonment, you should determine the question as though life imprisonment means exactly what the statute says, imprisonment in the State's prison for life. You should decide the question of punishment according to the issues submitted to you by the Court, wholly uninfluenced by consideration of what another arm of the government might or might not do in the future.

*Robbins*, 319 N.C. at 518, 356 S.E. 2d at 310. We rejected the defendant's argument that the trial court was constitutionally required to inform the jury about parole procedures in order to dispel the misconceptions most jurors have about parole. We held that because parole procedures are irrelevant to a sentencing determination, they cannot be considered by the jury during sentencing. *Id.* at 521-22, 356 S.E. 2d at 312.

Here, defendant argues that the court erred by refusing to allow defense counsel to question potential jurors concerning their misconceptions about parole. Because parole eligibility is irrelevant to the issues at trial and is not a proper matter for the jury to consider in recommending punishment, we hold that the court properly refused to allow defense counsel to question potential jurors as to their knowledge about parole eligibility. The Fifth Circuit noted on rehearing in *King* that "Texas policy follows that of the large majority of states and avowedly seeks to assist defendants by forbidding a jury to increase their punishment in anticipation of possible parole or clemency," and that to accept the defendant's contention would be contrary to that policy. *King*, 850 F. 2d at 1060-61. We agree with that court that to "re-inject notions of parole eligibility at the forefront of the judicial proceedings," *id.* at 1061, would be an improvident practice. Therefore, we hold that the trial court did not err in denying defendant's request.

[4] Defendant next contends that the trial court erred by excusing three prospective jurors for cause due to their feelings about the death penalty without proper inquiry as to their ability to follow the law and by denying defendant the opportunity to question these prospective jurors. We find no error.

The first prospective juror challenged for cause indicated that she might not be able to vote for the death penalty under any circumstances. The court questioned her:

Now, the question that we're asking at this point is in that context, in that sentencing proceeding, could you consider both of the alternative punishments, both death and life imprisonment or would you automatically in every case vote for one particular punishment, specifically life imprisonment?

A. I—I could consider both but I don't think I'd want to be a part of a jury that had anything to do with putting anyone to death.

COURT: Well—

A. I wouldn't want to be part of a jury that decided to put someone to death.

COURT: Whether you would want to be part of a jury which did that or not, could you consider both alternative punishments and if you determined that the death penalty was appropriate vote for the death penalty.

A. No.

COURT: You could not?

A. I don't think I could.

COURT: Not under any circumstances?

A. No, I don't think so.

Defendant argues that the excusal for cause of this prospective juror violated *Wainwright v. Witt*, 469 U.S. 412, 83 L.Ed. 2d 841 (1985). In *Wainwright*, the United States Supreme Court held that a juror could not be excluded for cause based on that juror's views about the death penalty unless those views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Id.* at 424, 83 L.Ed. 2d at 851-52 (quoting *Adams v. Texas*, 448 U.S. 38, 45, 65 L.Ed. 2d 581, 589 (1980)). The prospective juror here stated that she did not think that she could, under any circumstances, be part of a jury that sentenced someone to death. It is evident that her views on capital punishment impaired her ability to perform her duties as a juror in accordance with the trial court's instructions and with her oath. Therefore, the trial court did not abuse its discretion by removing her for cause.

The second prospective juror responded that he was opposed to the death penalty. When asked whether his beliefs were so strong that he could not under any circumstances vote for the death penalty, he answered, "That's right." The third prospective juror answered "yes" to the question whether she would vote against the death penalty no matter what the evidence showed. It is evident that these prospective jurors' views on capital punishment impaired their ability to perform their duties as jurors. Therefore, the trial court did not abuse its discretion by removing them for cause.

Defendant also argues that the trial court erred by not allowing him to question each of these prospective jurors before they were excused. However, there is nothing in the record to indicate that any of these prospective jurors would have been rehabilitated by defendant. Their answers to questions propounded by the prosecutor were unambiguous and indicated that they could not put aside their personal views and fulfill their duty according to North Carolina law. In *State v. Reese*, 319 N.C. 110, 353 S.E. 2d 352 (1987), we held:

> When challenges for cause are supported by prospective jurors' answers to questions propounded by the prosecutor and by the court, the court does not abuse its discretion, at least in the absence of a showing that further questioning by defendant would likely have produced different answers, by refusing to allow the defendant to question the juror challenged.

*Id.* at 120-21, 353 S.E. 2d at 358 (quoting *State v. Oliver*, 302 N.C. 28, 40, 274 S.E. 2d 183, 191 (1981) ). Defendant has not made a showing that further questioning would have revealed different answers. Therefore, we find no abuse of discretion in the trial court's decision to deny further inquiry.

[5] Defendant next contends that the trial court abused its discretion by denying his challenges for cause of three prospective jurors. When the court denied defendant's challenges for cause of Ms. Moell and Mr. McLean, defendant used peremptory challenges to remove them. Defendant contends that he had exhausted his fourteen peremptory challenges when the trial court refused to excuse Ms. Jones, and that he improperly was precluded from challenging her.

The record reveals, however, that defendant only used thirteen of his fourteen peremptory challenges during jury voir dire, leaving one remaining peremptory challenge which he could have used to strike Ms. Jones. N.C.G.S. § 15A-1214(h) and (i) state:

(h) In order for a defendant to seek reversal of the case on appeal on the ground that the judge refused to allow a challenge made for cause, he must have:

(1) Exhausted the peremptory challenges available to him;

(2) Renewed his challenge as provided in subsection (i) of this section; and

(3) Had his renewal motion denied as to the juror in question.

(i) A party who has exhausted his peremptory challenges may move orally or in writing to renew a challenge for cause previously denied if the party either:

(1) Had peremptorily challenged the juror; or

(2) States in the motion that he would have challenged that juror peremptorily had his challenges not been exhausted.

N.C.G.S. § 15A-1214(h), (i) (1988). In *State v. Saunders*, 317 N.C. 602, 346 S.E. 2d 451 (1986), we held that "[t]he statutory method for preserving a defendant's right to seek appellate relief when a trial court refuses to allow a challenge for cause is mandatory and is the only method by which such rulings may be preserved for appellate review." *Id.* at 608, 346 S.E. 2d at 456; *see also State v. Quesinberry*, 319 N.C. 228, 235, 354 S.E. 2d 446, 450 (1987) ("[b]ecause [defendant] did not exhaust his peremptory challenges as provided by N.C.G.S. § 15A-1214(h), no prejudice has been shown as to the juror who remained on the panel"). Because defendant did not exhaust his peremptory challenges, he did not comply with the statute. Therefore, he has not preserved his right to appeal on this issue.

[6] Defendant next contends that the trial court erred by failing to intervene *ex mero motu* in portions of the prosecutor's closing argument. The arguments of counsel are left largely to the control and discretion of the trial judge. *State v. Gladden*, 315 N.C.

398, 422, 340 S.E. 2d 673, 688, *cert. denied*, 479 U.S. 871, 93 L.Ed. 2d 166 (1986). Counsel will be granted wide latitude in the argument of fiercely contested cases. *Id.* Counsel may argue the law, the facts in evidence, and all reasonable inferences to be drawn from them. *Id.* Counsel may not refer to facts not in evidence or argue his or her own knowledge, beliefs and personal opinions not supported by the evidence. *Id.* Because defendant did not object to the portions of the argument to which he now assigns error, "review is limited to an examination of whether the argument was so grossly improper that the trial [court] abused [its] discretion in failing to intervene *ex mero motu.*" *Id.* at 417, 340 S.E. 2d at 685.

First, defendant argues that the prosecutor improperly told the jury that he "represented" the victim by saying, "Being a prosecutor is not always a pleasant task, for I speak, Mr. Hobgood speaks for two dead ladies who can not speak." Defendant claims that this statement violates the holding in *Booth v. Maryland*, 482 U.S. 496, 96 L.Ed. 2d 440 (1987). There, the United States Supreme Court held that a sentencing jury must make its recommendation based on the character of the defendant and the circumstances of the crime and not on the personal characteristics of the victim. *Id.* at 502-505, 96 L.Ed. 2d at 448-49. The Supreme Court held that the use of a victim impact statement at the sentencing phase of a capital trial violated the Eighth Amendment. *Id.* at 509, 96 L.Ed. 2d at 452. Here, unlike in *Booth*, the district attorney did not mention any of the personal characteristics of the victims, nor did he discuss the impact of their deaths on their families. Rather, he reminded the jury that he was an advocate for the two victims. We do not find this argument so grossly improper that the court abused its discretion in failing to intervene *ex mero motu.*

Second, defendant claims that the prosecutor argued facts not in evidence when he said about Ms. Stallings, "She's been stabbed. She's been stripped. . . . Obviously from this evidence she has been abused. She stands naked begging for her life and he needs a rifle to frighten her." We conclude that there is evidence to support the prosecutor's statements. There was evidence indicating that defendant had removed part of Ms. Stallings' clothes before he shot her. Ms. McNeil testified that defendant took off Ms. Stallings' clothes after he had strangled her and that

the strangling took place before Ms. McNeil went to get the rifle. The clothes, found in a pile on the floor, had very little blood on them, although there was much blood on the floor and the walls around the body. The autopsy revealed that the victim had been stabbed and otherwise abused. Dr. LeGrand testified that several of the wounds, including the stab wound, the abdominal wound, and the wounds around the left eye, were inflicted before the victim died. Moreover, Ms. McNeil testified that when defendant started choking Ms. Stallings, she said, "Please, y'all, don't hurt me." It is a reasonable inference from the evidence that, before defendant killed Ms. Stallings, he removed her clothes and she begged for her life. This argument was not so grossly improper as to require *ex mero motu* intervention by the trial court.

Third, defendant claims that the prosecutor improperly argued what the victim must have thought as she died. The prosecutor said:

> I'm sure she could speak to you quite vividly if she was here to tell you what is fair and what is unfair. I'm sure she said to Leroy McNeil in her own mind, I'm eighteen years old and I don't want to die. I'm going to die and that's just not fair. No doubt she must have thought she'd never see her mother and her sister and her friends again, and [that] just wasn't fair. No doubt she thought to herself that the last person that she would see on this earth is the man who would murder her, and that's certainly not fair.

In *State v. King*, 299 N.C. 707, 264 S.E. 2d 40 (1980), we held that the prosecutor's comments concerning the thoughts of the victim before he died that he never would see his family again were not so improper as to require the trial court to intervene *ex mero motu. Id.* at 711-13, 264 S.E. 2d at 43-44. Likewise, the prosecutor's argument here was not so grossly improper as to require the court to intervene. It was based on facts in evidence and on reasonable inferences from those facts.

We conclude that the guilt phase of defendant's trial was fair and free of prejudicial error.

### SENTENCING PHASE

[7] Defendant first contends that the trial court erred in failing to submit as a nonstatutory mitigating circumstance that he was

remorseful. When defense counsel requested this circumstance, the court asked what evidence showed remorse. Defense counsel responded that "the evidence of the confession shortly after the murders took place is evidence of the remorsefulness of the defendant." The court then refused to submit defendant's remorse as a mitigating circumstance.

A trial court has no duty to instruct on a mitigating circumstance unless the record discloses evidence from which the jury reasonably could infer that the circumstance exists. *State v. Wilson*, 322 N.C. 117, 143, 367 S.E. 2d 589, 604 (1988). We have examined defendant's confession and find no expression of remorse. Therefore, we hold that the trial court did not err in failing to submit remorse as a mitigating circumstance.

Defendant argues, however, that his statement to the jury in the form of an allocution supports an instruction on this mitigating circumstance. After the court refused to submit defendant's remorse as a mitigating circumstance, and prior to the special prosecutor's closing argument to the jury, the court allowed defendant to address the jury. Defendant stated:

> I won't take up too much of your time because I realize there's nothing that I can say or anyone here in this courtroom can say that would bring back the lives of those two girls, even my saying that I'm sorry is not going to bring them back. This thirteen or fourteen months that I have been locked up or incarcerated has really brought a lot back to me. It made me realize that there's a lot that I have done, minor things and major things, that if I had to do them again now today I know that I would not do and I deeply say inside that I am sorry for what I have done and I wish there was some way that you all could take it under consideration and spare my life and give me a chance.

Before the court charged the jury, defendant did not renew his request that the court submit remorse as a mitigating circumstance. After the court charged the jury, the court asked whether defendant had requests for additional instructions. Defense counsel responded that he did not.

The trial court did not err in refusing to submit remorse as a mitigating circumstance based on defendant's statement that he

was sorry for committing the crimes. Defendant's statement to the jury was made in allocution. He was not under oath, nor was he subject to cross-examination. Absent such, his statement was not evidence. Therefore, the court had no duty to instruct on remorse. *See id.*

[8]  Defendant next contends that the trial court erred by failing to intervene *ex mero motu* in portions of the prosecutor's closing argument. Because defendant did not object to the portions of the argument to which he now assigns error, "review is limited to an examination of whether the argument was so grossly improper that the trial [court] abused [its] discretion in failing to intervene *ex mero motu." State v. Gladden,* 315 N.C. 398, 417, 340 S.E. 2d 673, 685, *cert. denied,* 479 U.S. 871, 93 L.Ed. 2d 166 (1986).

Defendant first argues that the prosecutor made assertions which were not supported by the evidence. The prosecutor commented on defendant's allocution as follows:

> He has the right of eloquention [sic] and he just expressed that right. He spoke with you about that request. He also had that right in 1977, and I wonder what he told the Judge when he pled guilty to killing his wife before he was sentenced.
>
> Do you believe him? Do you really think he's sorry?

The prosecutor then said that the only appropriate sentence for defendant was death, and asked, "If you tell me we have not yet reached that point, then please tell me how many bodies it takes. Is there some magic number? Is three not enough?" Finally, the prosecutor called the women on the jury by  name, then asked them collectively how they would have felt

> if he had said to you as you stood naked before him and you begged for your life with all the fiber in your being, if he had said to you: Today you will die I have decided, not God, not nature, I have decided. I have decided the place where you will die. I have decided the time of your death. I have decided the manner of your death. Can you conceivably close your eyes and think how you would have felt? You can't, you can't, you really can't. There's no way that you can appreciate the horror of that or the terror of that, nor can I, and I certainly hope that you never will have to, nor will I.

We conclude that the prosecutor's argument was not so grossly improper that the court abused its discretion in failing to intervene *ex mero motu*. It was not improper for the prosecutor to comment on defendant's prior conviction of involuntary manslaughter, because that conviction was in evidence. Further, the prosecutor's question, "Is three not enough?" did not require *ex mero motu* intervention by the court. *See State v. Holden*, 321 N.C. 125, 156, 362 S.E. 2d 513, 532 (1987), *cert. denied*, --- U.S. ---, 100 L.Ed. 2d 935 (1988) (prosecutor's question "How many more women are we going to have to see this man rape before we say enough is enough?" not so grossly improper as to require *ex mero motu* intervention). Finally, the prosecutor's address to the women on the jury was not so grossly improper as to require *ex mero motu* intervention. We held in *Holden* that the trial court properly sustained the State's objection to a part of the defense counsel's jury argument asking each juror individually to save the defendant's life. *Id.* at 163, 362 S.E. 2d at 537. However, here the prosecutor did not make a personal plea to each female juror; rather, he called them by name, then spoke to them collectively.

Second, defendant argues that the prosecutor improperly appealed to community sentiment in suggesting that only a death sentence would prevent this type of crime. The prosecutor said:

You are the moral conscience of this community. . . .

. . . Today I'm asking you to be a part of enforcement of our law. Police officers can't do it by themselves. . . .

. . . .

. . . Your verdict as the jury in this case is a message to your community, to your state and to your world. The question is: What will your message be? The eyes of your community are upon you. There's no getting around it. I suggest to you that you do all have the ability to stand confidently before this Court and be satisfied to a moral certainty beyond a reasonable doubt with respect to the law and the evidence that the just and proper verdict in this case, in these two cases is that the defendant be sentenced to death. I suggest to you that under the law and under the facts there's no other reasonable alternative.

. . . .

I tell you again the eyes of your community are upon you. What message will you speak from your verdict? Only you can tell me that.

We have upheld arguments by prosecutors suggesting to juries that they are the "voice and conscience of the community" and that they have an obligation to do something about serious crime. *State v. Brown*, 320 N.C. 179, 203-04, 358 S.E. 2d 1, 18, *cert. denied*, --- U.S. ---, 98 L.Ed. 2d 406 (1987); *State v. Miller*, 315 N.C. 773, 780-81, 340 S.E. 2d 290, 294-95 (1986). Defendant argues, however, that *State v. Scott*, 314 N.C. 309, 333 S.E. 2d 296 (1985), controls this issue. In *Scott*, the defendant was charged with driving under the influence and two other counts, all arising out of a fatal traffic accident. The prosecutor argued that "there's a lot of public sentiment at this point against driving and drinking, causing accidents on the highway." We held that this argument was improper because it went outside the record and appealed to the jury to convict the defendant because impaired drivers had caused other accidents. *Id.* at 312, 333 S.E. 2d at 298. The State was improperly "asking the jury to lend an ear to the community rather than a voice." *Id.* (quoting *Prado v. State*, 626 S.W. 2d 775, 776 (Tex. Crim. 1982)).

In the case now before us, the prosecutor asked the jury what message it would send to the community, not to "lend an ear to the community." Moreover, the prosecutor did not go outside the record and appeal to the jury to convict defendant because other murderers had killed other victims, nor did he encourage the jury to base its determination on public sentiment. *See State v. Robbins*, 319 N.C. 465, 524, 356 S.E. 2d 279, 313, *cert. denied*, --- U.S. ---, 98 L.Ed. 2d 226 (1987). Rather, he reminded the jurors that they must decide the case on the evidence and the law. Therefore, his argument did not require *ex mero motu* intervention by the court.

Third, defendant claims that the following argument by the prosecutor was grossly improper because it asked the jurors to set a standard for their community regarding the imposition of the death penalty:

I think you can say from this evidence that we have reached a point with Leroy McNeil which the only sentence appropriate under the law is death. If you tell me we have

not yet reached that point, then please tell me how many bodies it takes. Is there some magic number? Is three not enough? If you tell me you don't agree, then you tell me what greater violation of the human being and acts of degradation on a victim you would require beyond that which Faye Stallings suffered. I suggest to you that your mind may not allow you to find much greater degradation, much greater violation of the spirit, much greater destruction of human dignity prior to death.

The prosecutor stated further:

Dr. Rose testified that he has appeared before, testified in cases, names like Barfield, Hutchins, Kirkley, McDougall, names [that will] forever remain in infamy in North Carolina, names that are synonymous with death. Leroy McNeil has joined that group of people.

Defendant argues that asking the jury to consider other cases in which death sentences have been imposed violates defendant's right to individualized sentencing in a capital case. Finally, defendant argues that the prosecutor tried to absolve the jurors of their responsibility for putting someone to death by telling them that if they returned a recommendation of the death sentence, defendant, not the jury, would be responsible for his execution. These arguments were not so grossly improper as to require the trial court to intervene *ex mero motu.*

[9] Defendant next contends that the trial court erred in instructing the jury as follows:

[T]he first aggravating circumstance, if it applies at all, would under the evidence in this case apply in both cases. It reads as follows:

[H]as [defendant] been previously convicted of a felony involving the use of violence to the person? Now voluntary manslaughter is by definition a felony involving the use of violence to the person. . . .

The court also instructed the jurors that if they did not find the existence of this aggravating circumstance, then they should answer the circumstance "no" for both murders.

Defendant argues that the court's instruction was an improper expression of opinion and that the jury would have understood the instruction to mean that the State had established this aggravating circumstance. He argues that the instruction set up an irrebuttable presumption, lessening the State's burden of proving this circumstance beyond a reasonable doubt.

Because defendant did not object to this instruction at trial, he must show that the court committed plain error in giving the instruction. *State v. Zuniga*, 320 N.C. 233, 263, 357 S.E. 2d 898, 917, *cert. denied*, --- U.S. ---, 98 L.Ed. 2d 384 (1987). The test is whether the alleged error had a probable impact on the verdict. *Id.*

In *State v. McDougall*, 308 N.C. 1, 301 S.E. 2d 308, *cert. denied*, 464 U.S. 865, 78 L.Ed. 2d 173 (1983), we held that where a prior crime committed by the defendant has the use or threat of violence as an element, introduction of the record of the prior conviction can support a peremptory instruction on this aggravating circumstance. *Id.* at 22, 301 S.E. 2d at 321. Here, the State introduced the record of defendant's prior conviction of the voluntary manslaughter of his former wife, Cynthia Latham McNeil. Defendant did not offer evidence that the killing of his former wife did not involve the use of violence to the person. Voluntary manslaughter is the unlawful killing of another without malice and without premeditation and deliberation. *State v. Barts*, 316 N.C. 666, 692, 343 S.E. 2d 828, 845 (1986). "Generally, voluntary manslaughter occurs when one kills intentionally but does so in the heat of passion suddenly aroused by adequate provocation or in the exercise of self-defense where excessive force is utilized or the defendant is the aggressor." *Id.* Voluntary manslaughter usually — probably always — involves violence to the person within the meaning and intent of N.C.G.S. § 15A-2000(e)(3). In light of this, and of defendant's failure to offer evidence that the killing of his former wife did not involve violence to the person, we cannot conclude that the court's instruction that voluntary manslaughter is a crime involving the use of violence to the person amounted to plain error.

Defendant also argues that the trial court erred by instructing the jury on this aggravating circumstance that "the first aggravating circumstance, if it applies at all, would under the

evidence in this case apply in both cases." Defendant claims that this language prohibited the jury from considering this aggravating circumstance separately as to each murder, citing *State v. Parrish*, 275 N.C. 69, 165 S.E. 2d 230 (1969). In *Parrish* we held that the trial court must instruct the jury to give separate consideration to cases of two codefendants being tried jointly for the same crime. This case, however, involves one defendant on trial for two murders. The evidence supporting the aggravating circumstance that defendant had been convicted previously of a felony involving the use of violence to the person was identical in both cases. We find no plain error.

[10] Defendant next contends that the trial court erred by submitting the aggravating circumstance that the murder of Ms. Stallings was especially heinous, atrocious, or cruel. N.C.G.S. § 15A-2000(e)(9) (1988). This aggravating circumstance exists where "the level of brutality involved exceeds that normally present in first-degree murder, or when the first-degree murder in question was conscienceless, pitiless, or unnecessarily torturous to the victim." *State v. Brown*, 315 N.C. 40, 65, 337 S.E. 2d 808, 826-27 (1985), *cert. denied*, 476 U.S. 1165, 90 L.Ed. 2d 733 (1986), *overruled on other grounds, State v. Vandiver*, 321 N.C. 570, 364 S.E. 2d 373 (1988) (citations omitted). "[T]his factor is [also] appropriate when the killing demonstrates an unusual depravity of mind on the part of the defendant beyond that normally present in first-degree murder." *Id.* at 65, 337 S.E. 2d at 827.

Ms. McNeil testified that defendant grabbed Ms. Stallings around the neck, pulled out a knife, and forced her into the bedroom. He demanded her food stamps, then choked her until she lost consciousness. Finally, he told Ms. McNeil to get his rifle from next door, and when she did, he shot Ms. Stallings. The evidence tends to show that defendant not only choked and shot the victim, but that he beat her, stabbed her, and hit her in the face with a wooden frame which had nails sticking out of it. There was also evidence tending to show that defendant pushed feces into her vagina. This evidence is sufficient to show that the murder was excessively brutal and unnecessarily torturous to the victim. The trial court, therefore, did not err in submitting as an aggravating circumstance that the murder was especially heinous, atrocious, or cruel.

[11] Defendant next contends that the trial court erred by submitting as an aggravating circumstance that each murder was committed while defendant was engaged in the commission of a robbery. N.C.G.S. § 15A-2000(e)(5) (1988). Where the jury convicts a defendant of first degree murder based solely on the felony murder rule, it is improper for the court to submit the underlying felony as one of the aggravating circumstances defined by N.C.G.S. § 15A-2000(e)(5). *State v. Silhan,* 302 N.C. 223, 262, 275 S.E. 2d 450, 478 (1981). However, when a defendant is convicted of first degree murder based on both premeditation and deliberation and the felony murder rule, and both theories are supported by the evidence, the underlying felony may be submitted as an aggravating circumstance. *Id.*

Defendant argues that there was insufficient evidence of premeditation and deliberation to warrant submission of first degree murder on that theory to the jury. We have held that the evidence was sufficient to support the elements of premeditation and deliberation in the murder of Deborah Fore. We also hold that the evidence is sufficient to support the elements of premeditation and deliberation in the murder of Elizabeth Stallings. Because defendant was convicted of both first degree murders on a premeditation and deliberation theory, as well as on a felony murder theory, the court did not err in submitting, for each murder, the aggravating circumstance that the murder was committed while defendant was engaged in the commission of a robbery.

Defendant raises the following "preservation" issues:

[12-14] (1) He contends that the trial court erroneously excluded prospective jurors for cause because of their feelings about capital punishment. Both the United States Supreme Court and this Court have held that "death qualification" of a jury is not unconstitutional. *Lockhart v. McCree,* 476 U.S. 162, 90 L.Ed. 2d 137 (1986); *State v. Evangelista,* 319 N.C. 152, 166, 353 S.E. 2d 375, 385 (1987).

(2) He contends that the trial court erred in instructing the jury that a rifle and a pistol are deadly weapons as a matter of law. This was not error. *State v. Torain,* 316 N.C. 111, 120, 340 S.E. 2d 465, 470, *cert. denied,* 479 U.S. 836, 93 L.Ed. 2d 77 (1986).

(3) He contends that N.C.G.S. § 15A-2000(e)(9), which allows the jury to find as an aggravating circumstance that the murder

was "especially heinous, atrocious, or cruel," has been applied unconstitutionally. This argument is without merit. *State v. Fullwood*, 323 N.C. 371, 399-400, 373 S.E. 2d 518, 535 (1988).

(4) He contends that N.C.G.S. § 15A-2000 is unconstitutionally vague and overbroad, both facially and as applied. This argument is without merit. *State v. Brown*, 315 N.C. 40, 60-61, 337 S.E. 2d 808, 823-24 (1985), *cert. denied*, 476 U.S. 1165, 90 L.Ed. 2d 733 (1986), *overruled on other grounds, State v. Vandiver*, 321 N.C. 570, 364 S.E. 2d 373 (1988).

(5) He contends that the trial court erred in instructing the jury that it had a duty to return a recommendation of death if it found that the mitigating circumstances were insufficient to outweigh the aggravating circumstances and that the aggravating circumstances were sufficiently substantial to call for the imposition of the death penalty. This argument is without merit. *State v. Robbins*, 319 N.C. 465, 515, 356 S.E. 2d 279, 308-09, *cert. denied*, --- U.S. ---, 98 L.Ed. 2d 226 (1987).

(6) He contends that the trial court erred in failing to instruct the jury that the State had the burden of proving the nonexistence of each mitigating circumstance beyond a reasonable doubt and in placing the burden on defendant to prove each mitigating circumstance by a preponderance of the evidence. This argument is without merit. *State v. Gladden*, 315 N.C. 398, 439, 340 S.E. 2d 673, 698, *cert. denied*, 479 U.S. 481, 93 L.Ed. 2d 166 (1986).

(7) Finally, he contends that the trial court erred in instructing the jurors that they must be unanimous before they could find the existence of a mitigating circumstance. Defendant bases this argument on *Mills v. Maryland*, 486 U.S. ---, 100 L.Ed. 2d 384 (1988). For the reasons expressed in *State v. McKoy*, 323 N.C. 1, 372 S.E. 2d 12 (1988), we reject this argument.

We conclude that the sentencing phase of defendant's trial was fair and free of prejudicial error.

PROPORTIONALITY REVIEW

[15] Because we have found no error in the guilt and sentencing phases, we are required to review the record and determine: (1) whether the record supports the jury's findings of the aggravating circumstances upon which the sentencing court based its

sentences of death; (2) whether the sentences were imposed under the influence of passion, prejudice, or any other arbitrary factor; and (3) whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crimes and the defendant. N.C.G.S. § 15A-2000(d)(2) (1988); *State v. Robbins*, 319 N.C. 465, 526, 356 S.E. 2d 279, 315 (1987), *cert. denied,* --- U.S. ---, 98 L.Ed. 2d 226 (1988).

The jury found three aggravating circumstances in the murder of Elizabeth Stallings: (1) defendant had been convicted previously of a felony involving the use of violence to the person, (2) the murder took place during the commission of robbery with a firearm, and (3) the murder was especially heinous, atrocious, or cruel. N.C.G.S. § 15A-2000(e)(3), (5), (9) (1988). The jury found two aggravating circumstances in the murder of Deborah Fore: (1) defendant had been convicted previously of a felony involving the use of violence to the person, and (2) the murder took place during the commission of robbery with a firearm. N.C.G.S. § 15A-2000(e)(3), (5) (1988). The record fully supports the jury's findings of these aggravating circumstances.

We find nothing in the record which suggests that the sentences of death were imposed under the influence of passion, prejudice, or any other arbitrary factor. We thus turn to our final statutory duty of proportionality review.

In conducting proportionality review, we "determine whether the death sentence in this case is excessive or disproportionate to the penalty imposed in similar cases, considering the crime and the defendant." *State v. Brown*, 315 N.C. 40, 70, 337 S.E. 2d 808, 829 (1985), *cert. denied*, 476 U.S. 1165, 90 L.Ed. 2d 733 (1986), *overruled on other grounds, State v. Vandiver*, 321 N.C. 570, 364 S.E. 2d 373 (1988). We use the "pool" of similar cases announced in *State v. Williams*, 308 N.C. 47, 301 S.E. 2d 335, *cert. denied*, 464 U.S. 865, 78 L.Ed. 2d 177, *reh'g denied*, 464 U.S. 1004, 78 L.Ed. 2d 704 (1983). *Id.* However, "[w]e do not find it necessary to extrapolate or analyze *in our opinions* all, or any particular number, of the cases in our proportionality pool." *State v. Robbins*, 319 N.C. at 529, 356 S.E. 2d at 316 (emphasis in original).

This Court has found the death sentence disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E. 2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E. 2d 653 (1987); *State v.*

*Rogers*, 316 N.C. 203, 341 S.E. 2d 713 (1986), *overruled on other grounds, State v. Vandiver*, 321 N.C. 570, 364 S.E. 2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E. 2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E. 2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E. 2d 170 (1983); and *State v. Jackson*, 309 N.C. 26, 305 S.E. 2d 703 (1983). In none of these cases was the defendant convicted of more than one murder.

In the case now before us, defendant was convicted of two first degree murders. We stated in *Robbins*, that "[a] heavy factor against Robbins is that he is a multiple killer." *Robbins*, 319 N.C. at 529, 356 S.E. 2d at 316. We have affirmed the death penalty in numerous cases in which the defendant killed or seriously injured more than one person. *See, e.g., State v. Noland*, 312 N.C. 1, 25, 320 S.E. 2d 642, 656 (1984), *cert. denied*, 469 U.S. 1230, 84 L.Ed. 2d 369, *reh'g denied*, 471 U.S. 1050, 85 L.Ed. 2d 342 (1985) (citing other cases).

Defendant argues that *State v. King*, 316 N.C. 78, 340 S.E. 2d 71 (1986); *State v. Whisenant*, 308 N.C. 791, 303 S.E. 2d 784 (1983); and *State v. Crews & Turpin*, 296 N.C. 607, 252 S.E. 2d 745 (1979), where juries returned life sentences, are the cases in the pool most comparable to this case. We disagree.

The murders in *King, Whisenant,* and *Crews & Turpin*, although cruel and senseless, did not rise to the same level of brutality as the murders here. In *King*, the defendant shot into a house where his former girlfriend was hiding from him, killing her mother and sister. *King*, 316 N.C. at 79, 340 S.E. 2d at 72. The jury convicted the defendant on a felony murder theory rather than on a premeditation and deliberation theory. *See id.* at 80, 340 S.E. 2d at 72-73. In *Whisenant*, the defendant was convicted of killing an elderly man and his housekeeper. *Whisenant*, 308 N.C. at 792, 303 S.E. 2d at 785. However, that jury convicted the defendant of only one count of first degree murder; the other conviction was for second degree murder. *See id.* at 792, 303 S.E. 2d at 784. In *Crews & Turpin*, the defendants lured two men to their campsite on the pretense that someone had car trouble. Defendant Crews shot one of the men and took his wallet. When the other man tried to run away, defendant Turpin shot him. *Crews & Turpin*, 296 N.C. at 610, 252 S.E. 2d at 748. Although *Crews & Turpin* is somewhat similar to the present case, there are two im-

portant distinctions: first, although each defendant was convicted of two counts of first degree murder, each defendant actually shot only one man; second, there was no physical torture involved in either murder, as there was in the murder of Elizabeth Stallings here. *See id.*

The facts of this case are more similar to the facts in *Robbins*. There, the jury convicted the defendant of two counts of first degree murder and returned a recommendation of the death sentence for each murder. Although we remanded one of the murder counts to the trial court for a new sentencing hearing, we examined the other murder and determined the death penalty not to be disproportionate. *Robbins*, 319 N.C. at 530, 356 S.E. 2d at 316. Robbins killed his two victims in three days. *Id.* at 528, 356 S.E. 2d at 317. He took them both to isolated areas, then shot them. *Id.* at 528, 356 S.E. 2d at 316. The same aggravating circumstances found by the jury in *Robbins*—that the defendant previously had been convicted of a felony involving the use or threat of violence to the person, and that the murder was committed while the defendant was engaged in the commission of robbery with a firearm, *id.* at 526, 356 S.E. 2d at 315—were found by the jury as to both murders here, and here the jury also found as an aggravating circumstance in the murder of Elizabeth Stallings that the murder was especially heinous, atrocious, or cruel. We concluded in *Robbins* that under the circumstances the death sentence was not disproportionate or excessive, considering both the crime and the defendant. *Id.* at 529, 356 S.E. 2d at 317.

This case, like *Robbins*, involves two premeditated and deliberated first degree murders. The evidence shows that defendant killed Elizabeth Stallings to get money after spending his money on alcohol. He persuaded her to get in his car, planned to rob her, and drove her to an isolated area. He then robbed and brutally murdered her. After the murder, defendant continued to reside next door to the building where her body lay. Two days later, after another drinking spree, he planned to rob Deborah Fore. He called her and invited her to go out with him. After she got into his car, he drove to an isolated area and shot her. He then stole several things from her apartment.

Further, the jury found that defendant had been convicted previously of a felony involving the use of violence to the person

—the voluntary manslaughter of his wife. The evidence at trial showed, therefore, that defendant had killed three people.

Under these circumstances, considering both the crimes and the defendant, we cannot say that the death penalty recommendations here were excessive or disproportionate to the penalty imposed in similar cases.

We hold that the defendant received a fair trial and sentencing hearing, free of prejudicial error. In comparing this case to similar cases in which the death penalty was imposed, and in considering both the crimes and the defendant, we cannot hold as a matter of law that the death sentences were disproportionate or excessive. *State v. Robbins*, 319 N.C. at 529, 356 S.E. 2d at 317.

No error.

Chief Justice EXUM concurring.

I concur with the majority's treatment of all issues in the guilt and sentencing phases of this trial.

If in the sentencing phase the Court were addressing for the first time the mitigating circumstance unanimity instruction issue, I would agree with defendant's position that these instructions violate the Eighth Amendment to the federal constitution as that amendment was interpreted in *Mills v. Maryland*, 486 U.S. ---, 100 L.Ed. 2d 384 (1988), for the reasons stated in my dissenting opinions in *State v. McKoy*, 323 N.C. 1, 372 S.E. 2d 12 (1988), and *State v. Allen*, 323 N.C. 208, 372 S.E. 2d 855 (1988). The majority's position on this issue is, as a result of the Court's decisions in *McKoy* and *Allen*, the law of this state to which I am now bound. For this reason I concur with the majority's treatment of this issue.

Justice FRYE dissenting as to sentence.

For the reasons expressed in the Chief Justice's dissenting opinions in *State v. McKoy*, 323 N.C. 1, 372 S.E. 2d 12 (1988), and in *State v. Allen*, 323 N.C. 208, 372 S.E. 2d 855 (1988), I believe the United States Supreme Court's decision in *Mills v. Maryland*, 486 U.S. ---, 100 L.Ed. 2d 384 (1988), requires that defendant be given a new sentencing hearing. Accordingly, I dissent from that

**Collingwood v. G.E. Real Estate Equities**

portion of the Court's opinion which rejects defendant's argument based upon the holding of *Mills.* I concur in the result reached by the majority on the guilt phase issues.